Paul D. **EDWARDS, et al., Plaintiffs,**

v.

**ALABAMA DEPARTMENT OF CORRECTIONS, et al., Defendants.**

**No. Civ.A. 97–T–1746–N.**

United States District Court, M.D. Alabama, Northern Division.

Jan. 14, 2000.

Thomas E. Baddley, Jr., Jeffrey P. Mauro, Baddley & Mauro, LLC, Birmingham, AL, for Emanuel Moore, Renee Brown, Debra Kay Echols, Denise Mayfield, Paul D. Edwards, plaintiffs.

David B. Byrne, Jr., Robison & Belser, P.A., Montgomery, AL, Ellen Ruth Leonard, Andrew W. Redd, Alabama Department of Corrections, Legal Division, Montgomery, AL, for Alabama Department of Corrections, Ronald E. Jones, defendants.

## OPINION

MYRON H. THOMPSON, District Judge.

The plaintiffs, Paul D. Edwards, Debra Kay Echols, and Denise Mayfield, filed this lawsuit on December 19, 1997, on behalf of themselves and a class of all current and future HIV-positive inmates in Alabama's state-run prisons, to challenge the conditions of their confinement. They have named as defendants the Alabama Department of Corrections (DOC), its former commissioners Ron Jones and Joe S. Hopper, its current commissioner Michael Haley, and Correctional Medical Services, Inc. (CMS). They base their lawsuit on the eighth amendment to the United States Constitution (as enforced through 42 U.S.C.A. § 1983) and on Title II of the Americans with Disabilities Act (42 U.S.C.A. §§ 12131–12165), commonly known as the ADA. The jurisdiction of this court has been properly invoked under 28

U.S.C.A. §§ 1331 (federal question) and 1343(a)(4) (civil rights), and under 42 U.S.C.A. § 12117 (ADA).

This litigation is currently before the court on motions to dismiss filed by the defendants.[1] Based on the representations made to the court in the parties' written submissions and at oral argument on November 30, 1999, the court concludes that these motions should be granted.

## I. MOTION–TO–DISMISS STANDARD

In considering the defendants' motions to dismiss, the court accepts the plaintiffs' allegations as true, see Fed.R.Civ.P. 12(b); *Andreu v. Sapp,* 919 F.2d 637, 639 (11th Cir.1990), and construes the complaint liberally in the plaintiffs' favor. *See Scheuer v. Rhodes,* 416 U.S. 232, 236, 94 S.Ct. 1683, 1686, 40 L.Ed.2d 90 (1974). The lawsuit may not be dismissed unless the plaintiffs can prove no set of facts supporting the relief requested. *See Id.* at 236, 94 S.Ct. at 1686; *Duke v. Cleland,* 5 F.3d 1399, 1402 (11th Cir.1993).

## II. BACKGROUND

The plaintiffs' case comprises two separate claims. First, they claim that the defendants have discriminated against them on the basis of their HIV-positive status by segregating them from the general prison population. This policy of segregation requires not only that HIV-positive inmates sleep in separate living quarters, but also that they be excluded from virtually all educational, work-related, and other programs in which the general prison population is entitled to participate. The plaintiffs claim that these policies unlawfully abridge their rights guaranteed by Title II of the ADA against discrimination on the basis of disability. Secondly, the plaintiffs claim that the medical care they receive is so poor as to constitute cruel and unusual punish-

ment in violation of the eighth amendment.

This lawsuit is not the first of its kind in Alabama. In fact, a nearly identical case was filed on behalf of Alabama's HIV-positive inmates on November 17, 1987. *Onishea v. Hopper,* civil action no. 87–V–1109–N (M.D.Ala.) originally styled *Harris v. Thigpen,* named as defendants the Alabama Department of Corrections and its commissioner; Correctional Health Care, Inc. and its director; and certain wardens and sheriffs. The case, which for ease of discussion this court will solely refer to as *Onishea,* challenged the DOC's practice of testing all inmates for HIV, the department's segregation of inmates on the basis of HIV-positive status, and the quality of the medical care the department provides for such inmates. The *Onishea* plaintiffs based their lawsuit on the first, fourth, eighth, and fourteenth amendments, and on 29 U.S.C.A. § 794, popularly known as § 504 of the Rehabilitation Act of 1973.

After a bench trial, the district court rejected all of the *Onishea* plaintiffs' claims and entered judgment for the defendants. *See Harris v. Thigpen,* 727 F.Supp. 1564 (M.D.Ala.1990) (Varner, J.). The plaintiffs appealed to the Eleventh Circuit Court of Appeals, which affirmed all of the district court's rulings except those regarding the plaintiffs' § 504 claim. *See Harris v. Thigpen,* 941 F.2d 1495 (11th Cir.1991). The appellate court concluded that the district court's analysis as to the § 504 claim was inadequate because it did not inquire into and make findings about whether the plaintiffs were "otherwise qualified" for participation in each individual prison program, or whether the accommodations that would be necessary to enable their participation were reasonable. *Id.* at 1526. The appellate court remanded the case to the district court for reconsideration of these issues. Upon remand, the district court again ruled against the *On-*

---

**1.** Commissioner Michael Haley was added as a defendant by this court's order of December 2, 1999. In that order, the court stated,

based on representations of the parties, that it was assumed that Haley had adopted all previous motions filed by Hopper and Jones.

*ishea* plaintiffs, and this time the Eleventh Circuit affirmed the lower courts's decision in full. *See Onishea v. Hopper,* 171 F.3d 1289 (11th Cir.1999) (en banc).

## III. DISCUSSION

### A. *Res Judicata*

The defendants' first argument in support of their motions to dismiss is that, because the plaintiffs' claims have already been litigated in *Onishea v. Hopper,* the plaintiffs' suit is barred from litigation under the doctrine of *res judicata.* The court concludes for the following reasons that *res judicata* applies to the plaintiffs' ADA claim but not to their eighth-amendment claim.

■■■■ *Res judicata,* or claim preclusion, attaches when the same cause of action is litigated between the same parties in consecutive cases. This doctrine, rather than that of collateral estoppel, or issue preclusion, provides the appropriate analytical structure for this case because the defendants argue that the causes of action raised by the plaintiffs in *Onishea* and here are identical, and that the plaintiffs' claims here should be barred in their entireties. Because this court is considering the preclusive effect of a prior federal court judgment, the federal common law of *res judicata* applies. *See Agripost, Inc. v. Miami–Dade County,* 195 F.3d 1225, 1230 n. 11 (11th Cir.1999); *Kachler v. Taylor,* 849 F.Supp. 1503, 1516 (M.D.Ala.1994) (Thompson, J.). In order for *res judicata* to apply, the following four elements must be satisfied: (1) there must have been a final judgment on the merits of the first action; (2) the first decision must have been rendered by a court of competent jurisdiction; (3) the parties to both actions, or those in privity with them, must be identical; and (4) the causes of action in both suits must be identical. *Israel Discount Bank Ltd. v. Entin,* 951 F.2d 311, 314 (11th Cir.1992); *Thomas v. Evans,* 880 F.2d 1235, 1240 (11th Cir.1989).

There is no dispute in this case as to the first three of these requirements, with regard to either the ADA claim or the eighth-amendment claim. As to the first two, the Eleventh Circuit clearly rendered a final judgment as to the ADA and the eighth-amendment claims in the *Onishea* case, and there is no question that it was a court of competent jurisdiction.

■■ In addition, the third requirement, that the parties be the same, applies. Rather than requiring strict identity of parties, this element is satisfied under federal common law if either the parties on each side of the prior suit are identical to those in the current litigation, or they are in privity with each other. Federal common law recognizes several ways in which parties may be ·in privity. Among these, privity exists where there is "a non-party whose interests were represented adequately by a party in the original lawsuit." *Southwest Airlines Co. v. Texas Intern. Airlines, Inc.* 546 F.2d 84, 95 (5th Cir. 1977); *see also Hart v. Yamaha–Parts Distributors, Inc.,* 787 F.2d 1468, 1472 (11th Cir.1986) (privity exists "where the nonparty's interests were represented adequately by the party in the original suit").

On the plaintiffs' side, the classes defined in the two cases are identical. In the amended complaint now before the court, the plaintiff class is defined as "all inmates who have tested positive for Human Immunodeficiency Virus (HIV) who are or will be confined in the jails and prisons throughout the state of Alabama." The plaintiff class definitions provided in the published opinions in *Onishea* are not altogether consistent; however, either the description as "all inmates or future inmates of the DOC, except those inmates who had indicated an intention to intervene on behalf of the defendants," *Harris,* 941 F.2d at 1500, or as "Alabama inmates who are HIV-positive," *Onishea v. Hopper,* 126 F.3d 1323, 1326 (11th Cir.1997), would include all of the members of the plaintiff class here.

On the defendants' side, most of the parties in the two cases are the same as well; the DOC and the commissioners of the DOC were named as defendants in *Onishea* and in the current litigation. The only difference in defendants is in the medical service provider named in the two suits; the plaintiffs in *Onishea* named Correctional Health Care, Inc., which at that time contracted with the state to provide medical services in the DOC's facilities, and the plaintiffs in this lawsuit have named the current health care provider, Correctional Medical Services. Though these are two distinct corporations, they nonetheless satisfy the identity-of-parties element by virtue of their being in privity with each other. The legal interests of the former and current medical provider for the DOC, at least as regards their defense against the plaintiffs' claims, are the same. Therefore, the court concludes that they are in privity as defined under federal common law, and that the third element is satisfied.

■ The crux of this case, then, lies in the fourth *res judicata* element, whether the causes of action in the two cases are identical. "The principal test for determining whether the causes of action are the same is whether the primary right and duty are the same in each case. In determining whether the causes of action are the same, a court must compare the substance of the actions, not their form." *Citibank, N.A. v. Data Lease Financial Corp.*, 904 F.2d 1498, 1503 (11th Cir.1990) (quoting *I.A. Durbin, Inc. v. Jefferson Nat'l Bank*, 793 F.2d 1541, 1549 (11th Cir. 1986)) (citations and footnote omitted). "In other words, a court 'must look to the factual issues to be resolved [in the second cause of action], and compare them with the issues explored in' the first cause of action." *Id.* (quoting *S.E.L. Maduro, Inc. v. M/V Antonio De Gastaneta*, 833 F.2d 1477, 1482 (11th Cir.1987)). "It is now said, in general, that if a case arises out of the same nucleus of operative fact, or is based upon the same factual predicate, as

a former action, that the two cases are really the same 'claim' or 'cause of action' for purposes of res judicata." *Id.* (quoting *Ruple v. City of Vermillion, S.D.*, 714 F.2d 860, 861 (8th Cir.1983), *cert. denied*, 465 U.S. 1029, 104 S.Ct. 1290, 79 L.Ed.2d 692 (1984)).

### 1. The ADA Claim

■ As to the plaintiffs' ADA claim here, the central question is whether the right that they seek to enforce under this statute is the same as the one that formed the basis of the *Onishea* plaintiffs' § 504 claim. The court concludes that it is, and that claim should therefore be precluded.

Looking at the plain language of the two statutes, they both prohibit discrimination on the basis of disability, and their language is strikingly similar. Section 504 of the Rehabilitation Act provides:

> "No otherwise qualified individual with a disability in the United States ... shall, solely by reason of her or his disability, be excluded from the participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance ..."

29 U.S.C.A. § 794(a). Title II of the ADA, on which the *Edwards* plaintiffs rely, states in nearly identical fashion:

> "[N]o qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity."

42 U.S.C.A. § 12132. Under Title III, the ADA similarly provides protection from discrimination on the basis of disability by "any person who ... operates a place of public accommodation." 42 U.S.C.A. § 12182(a). Thus, on their face, the statutes seem to protect the same group of individuals and the same rights. Indeed, the only difference between them appears to be in the kinds of defendants against

whom these rights can be enforced; § 504 protects against discrimination only by recipients of federal funding, while the ADA guards against the same prohibited behavior by both public entities and private operators of places of public accommodation.

In addition to the similarity in the language of the two statutes, the ADA provides additional support for the notion that both statutes enforce the same underlying right, through its inclusion of § 12133, which states that the "remedies, procedures, and rights" set forth in § 504 are the same as those provided by Title II of the ADA. It would appear, then, that the ADA was intended primarily to widen § 504's net, so that plaintiffs could enforce their rights against a broader group of potential defendants.

This interpretation of the relationship between the ADA and § 504 of the Rehabilitation Act has been adopted by this and other courts. In *Ethridge v. State of Alabama*, for example, this court stated: "A primary purpose of § 12131 was to extend the reach of § 504 of the Rehabilitation Act of 1973." 847 F.Supp. 903, 906 (M.D.Ala.1993) (Thompson, J.); *see also Everett v. Cobb County Sch. Dist.*, 138 F.3d 1407, 1409 (11th Cir.1998) ("[C]auses of action brought under Title II of the ADA and the Rehabilitation Act are essentially identical."); *McPherson v. Michigan High School Athletic Ass'n*, 119 F.3d 453, 460 (6th Cir.1997) ("[T]he principal distinction between the two statutes is that coverage under the Rehabilitation Act is limited to entities receiving federal financial assistance, while the ADA's reach extends to purely private entities.")

These similarities between Title II of the ADA and § 504 of the Rehabilitation Act demonstrate that the plaintiffs here and the plaintiffs in *Onishea* have sought to enforce essentially the same right, and the claims that they assert are identical for the purpose of the *res judicata* doctrine. Therefore, the plaintiffs' ADA claim here is barred from relitigation by the Eleventh Circuit ruling in *Onishea*.

## 2. The Eighth–Amendment Claim

The defendants here also contend that the plaintiffs' eighth-amendment claim should be barred by the prior rulings in *Onishea*. They point out that the *Onishea* plaintiffs also asserted a claim that they had been subjected to cruel and unusual punishment in violation of the eighth amendment, and that the Eleventh Circuit clearly affirmed the district court against the plaintiffs. The plaintiffs here nonetheless maintain that their eighth amendment challenge to the DOC's practices is different from the eighth-amendment claim decided in *Onishea*. In support of this argument, the plaintiffs here contend that since their eighth-amendment claim is based on new facts, it is not identical to the prior cause of action, and therefore not precluded by the prior litigation. This argument is persuasive.

■ The determinative factor in ascertaining whether two causes of action are identical for *res judicata* purposes is not only whether the same legal claim is asserted, but also whether the factual underpinnings of the causes of action are constant. *See, e.g., S.E.L. Maduro*, 833 F.2d at 1482 (In determining whether *res judicata* applies, "we must look at the factual issues to be resolved in [the second case], and compare them with the issues explored in [the first].") According to the plaintiffs here, advances in medicine have occurred since the district court rejected the first eighth-amendment claim in 1990, which have changed the standard of care for HIV-positive patients and thus altered what constitutes cruel and unusual punishment in this context.

■■ As a general matter, the court notes that in any case in which a plaintiff seeks injunctive relief for an alleged ongoing eighth amendment violation, the plaintiff must provide evidence that the defendants breached the applicable standard "at the time suit was filed, and ... at the time of summary judgment ... and that they will continue to do so; and finally to estab-

lish eligibility for an injunction, the inmate must demonstrate the continuance of that disregard during the remainder of the litigation and into the future." *Farmer v. Brennan,* 511 U.S. 825, 846, 114 S.Ct. 1970, 1984, 128 L.Ed.2d 811 (1994); *see also Austin v. Hopper,* 15 F.Supp.2d 1210, 1262–63 (M.D.Ala.1998) (Thompson, J.). Therefore, evidence that there was or was not an eighth-amendment violation either at the time this lawsuit was filed, or at any time before that, cannot on its own prove that the plaintiffs' rights are not currently being violated. Though the district court's rulings in the *Onishea* litigation support the conclusion that the medical care provided to the plaintiffs are within constitutional limits, these rulings only provide evidence, and are not dispositive of the case now before this court. If the plaintiffs here have new evidence of changed circumstances since the issuance of the *Onishea* judgments, then they must have the opportunity to present such evidence in order to establish a current violation.

The particular facts now alleged by the plaintiffs here do transform their claim into a different cause of action because they change an essential element of the eighth-amendment claim. Under *Estelle v. Gamble,* a state's failure to provide adequate medical care to its prisoners constitutes an eighth-amendment violation only if the state exercises "deliberate indifference" to the prisoners' medical needs. 429 U.S. 97, 104, 97 S.Ct. 285, 291, 50 L.Ed.2d 251 (1976). What constitutes "deliberate indifference," as with any type of eighth-amendment violation, depends on "evolving standards of decency that mark the progress of a maturing society." *Id.* at 102, 97 S.Ct. at 290. Therefore, new information about the kinds, costs, and availability of new treatments for HIV patients, bears directly on what levels of care are current-

ly reasonable, and thus on what constitutes cruel and unusual punishment.

While a failure to provide certain treatments might not have risen to the level of deliberate indifference in 1990, that same level of care might now amount to an eighth-amendment violation, especially if the cost of such care has been reduced, or the number of treating physicians equipped to provide such care has increased. This seems especially true, given that the high cost of the then-available drugs, and the scarcity of qualified doctors in Alabama at the time, were among the primary factors that led the district court in *Harris v. Thigpen* to conclude that the defendants' behavior did not amount to deliberate indifference. *See Harris,* 727 F.Supp. at 1576–77. The threshold for deliberate indifference, defined by the "evolving standards of decency," might very well have changed in the nearly ten years since the district court rejected the *Onishea* plaintiffs' eighth-amendment claims, and the plaintiffs' claims here therefore should not be precluded from relitigation. The court therefore rejects the defendants' contention that the eighth-amendment claim raised by the plaintiffs here should be dismissed on *res judicata* grounds.[2]

B. *Eleventh–Amendment Immunity*

With regard to the plaintiffs' remaining claim, their eighth-amendment claim, the DOC and the current and former DOC commissioners argue that it should be dismissed because the eleventh amendment provides them immunity from suit. Each of their contentions will be taken up separately.

1. The DOC

██ The DOC asserts, and the plaintiffs concede, that the eleventh amendment to the United States Constitution bars

---

2. To be sure, the argument of changed circumstances, advanced as to why *res judicata* does not apply to the plaintiffs' eighth-amendment claim, could also be asserted as a basis to deny the application of *res judicata* to the plaintiffs' ADA claim. However, because the

plaintiffs do not make this argument with regard to their ADA claim, the court does not reach the argument, and nothing in this opinion should be taken to hold that the court has rejected the application of a changed-circumstances argument to the plaintiffs' ADA claim.

plaintiffs from suing the State directly. State agencies share this absolute immunity from suit. *See Alabama v. Pugh,* 438 U.S. 781, 782, 98 S.Ct. 3057, 3057, 57 L.Ed.2d 1114 (1978) ("There can be no doubt, however, that suit against the State and its Board of Corrections is barred by the Eleventh Amendment, unless Alabama has consented to the filing of such a suit."). Because the plaintiffs' eighth-amendment claim is asserted directly against the DOC, both for damages and for equitable relief, the DOC must be dismissed with prejudice. *See id.*

### 2. Commissioner Haley and Former Commissioners Jones and Hopper

 Haley, Hopper, and Jones argue that, insofar as they have been sued in their official capacities, the plaintiffs' eighth-amendment claim should be dismissed on eleventh-amendment immunity grounds as well.

Haley, Hopper, and Jones enjoy eleventh-amendment immunity from claims for damages brought against them in their official capacities. "[T]he eleventh amendment bar [on] damages action[s] against a State in federal court ... remains in effect when State officials are sued for damages in their official capacity." *Kentucky v. Graham,* 473 U.S. 159, 169, 105 S.Ct. 3099, 3107, 87 L.Ed.2d 114 (1985). In light of this principle, the court will dismiss the plaintiffs' eighth-amendment claim against Haley, Hopper, and Jones in their official capacities to the extent damages are sought.

 This ruling does not, however, apply equally to claims seeking equitable remedies from the defendants in their official capacities. The eleventh amendment does not insulate state officials acting in their official capacities from suit for prospective injunctive relief to remedy violations of federal constitutional law. *See Edelman v. Jordan,* 415 U.S. 651, 664–71, 94 S.Ct. 1347, 1356–60, 39 L.Ed.2d 662 (1974) (when a plaintiff sues a state official for a violation of federal law, the court may enjoin official's future conduct, but may not order the state to provide retroactive monetary relief). The eleventh amendment also does not bar monetary relief, including costs, ancillary to the prospective injunctive relief. *Graham,* 473 U.S. at 169 n. 18, 105 S.Ct. at 3107 n. 18 (citing *Edelman,* 415 U.S. at 667–68, 94 S.Ct. at 1357–58). Thus, the plaintiffs may sue Haley, Hopper, and Jones in their official capacities for prospective injunctive relief and costs associated with that relief. *See Pennhurst State School & Hosp. v. Halderman,* 465 U.S. 89, 102–03, 104 S.Ct. 900, 909, 79 L.Ed.2d 67 (1984).

### C. *Qualified Immunity*

 Haley, Hopper, and Jones have been sued in their individual capacities for damages only.[3] However, the doctrine of qualified immunity prevents them from being held liable in such capacities. Qualified immunity insulates government agents from personal liability for money damages for actions taken in good faith pursuant to their discretionary authority. *See Harlow v. Fitzgerald,* 457 U.S. 800, 102 S.Ct. 2727, 73 L.Ed.2d 396 (1982). As established by the Supreme Court in *Harlow,* the test for "good faith" or qualified immunity turns primarily on the objective reasonableness of the officials' conduct in light of established law: "governmental officials ... generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow,* 457 U.S. at 818, 102 S.Ct. at 2738. Where the law that the defendants allegedly violated was not clearly established at

---

**3.** The plaintiffs seek only damages (that is, they did not seek equitable relief) from these defendants in their individual capacities because, in their individual capacities, the defendants are not in a position to afford any other type of relief; only in his or her official capacity can a governmental official give equitable relief.

the time of the alleged offense, the defendants are entitled to qualified immunity. *Id.* at 807, 102 S.Ct. at 2732; *Stewart v. Baldwin County Bd. of Educ.,* 908 F.2d 1499, 1503 (11th Cir.1990). If the law was clearly established, however, the immunity defense will fail since "a reasonably competent public official should know the law governing his conduct." *Harlow,* 457 U.S. at 818, 102 S.Ct. at 2738.

■ The court must follow a two-step analysis to determine whether public officials are entitled to qualified immunity. *See Sims v. Metropolitan Dade County,* 972 F.2d 1230, 1236 (11th Cir.1992). First, the defendants must prove that they were acting within the scope of their discretionary authority at the time of the allegedly unconstitutional conduct. *See id.* Once this is shown, the burden shifts to the plaintiff to prove that the defendants' actions violated clearly established statutory or constitutional law. *See id.*

As to the first consideration, Haley, Hopper, and Jones clearly were acting within the scope of their discretionary authority in making decisions about the level of medical care provided for members of the plaintiff class. As DOC commissioners, Haley, Hopper, and Jones were ultimately responsible for creating and implementing all of the policies and procedures related to the conditions, programs, and services in Alabama's prisons. Decision-making related to the provision of medical care for inmates thus fell soundly within their discretion.

The Supreme Court has set forth a two-part test for evaluating the second qualified-immunity consideration, whether the defendants' actions violated clearly established statutory or constitutional law. First, the court must "determine ... whether the plaintiff has alleged a deprivation of a constitutional right at all. Normally, it is only then that a court should ask whether the right allegedly implicated was clearly established at the time of the events in question." *County of Sacramento v. Lewis,* 523 U.S. 833, ——

n. 5, 118 S.Ct. 1708, 1714 n. 5, 140 L.Ed.2d 1043 (1998); *see also Siegert v. Gilley,* 500 U.S. 226, 232, 111 S.Ct. 1789, 1793, 114 L.Ed.2d 277 (1991) ("A necessary concomitant to the determination of whether the constitutional right asserted by a plaintiff is 'clearly established' at the time the defendant acted is the determination of whether the plaintiff has asserted a violation of a constitutional right at all," and courts should not "assum[e], without deciding, this preliminary issue."); *Brown v. Cochran,* 171 F.3d 1329, 1332–33 (11th Cir. 1999) (adopting the approach outlined in *Lewis* and *Siegert*); *see also Crosby v. Paulk,* 187 F.3d 1339, 1344–45 (11th Cir. 1999). The Supreme Court noted that this preferred mode of analysis, while contradicting "the generally sound rule of avoiding determination of constitutional issues," is still appropriate because, "if the policy of avoidance were always followed in favor of ruling on qualified immunity whenever there was no clearly settled constitutional rule of primary conduct, standards of official conduct would tend to remain uncertain, to the detriment both of officials and individuals. An immunity determination, with nothing more, provides no clear standard, constitutional or non-constitutional." *Id.*

■ If the court determines that the plaintiffs have not alleged a deprivation of a constitutional right, then inquiry is over, for it would follow perforce that such right was not clearly established. However, if the court determines that the plaintiffs have, in fact, alleged a deprivation of a constitutional right, then further inquiry is needed as to whether that right was 'clearly established' at the time of the defendants' alleged violation of the right; and, of course, the violation of the clearly established right must be self-evident from the factual allegations set forth by the plaintiffs in their complaint. *See Rich v. Dollar,* 841 F.2d 1558, 1564 (11th Cir.1988).

■ On the question of whether the defendants' violation of the clearly estab-

lished right is self-evident from the plaintiffs' complaint, the court notes that the Eleventh Circuit Court of Appeals imposes a "heightened pleading requirement" on plaintiffs in § 1983 actions confronted with motions to dismiss, *see GJR Investments, Inc. v. County of Escambia*, 132 F.3d 1359, 1367 (11th Cir.1998), and here the plaintiffs' eighth-amendment claim is based on § 1983. Even though Rule 8 of the Federal Rules of Civil Procedure generally gives a plaintiff considerable leeway in pleading his case, this heightened pleading requires more detailed allegations by the plaintiff where the court is confronted with a claim of qualified immunity, because the court must have more specific information before it to evaluate adequately such a claim on a motion to dismiss. *Id.* Consequently, under current Eleventh Circuit law, the plaintiff pursuing a § 1983 claim must come forward with specific facts, concerning each defendant, indicating that each defendant has not only violated a constitutional right, but a clearly established one. Otherwise, when presented with a motion to dismiss, the court must conclude that the defendants, sued in their individual capacities, are entitled to qualified immunity.

Admittedly, the viability of the Eleventh Circuit's heightened pleading requirement for § 1983 claims has been significantly called into doubt by a recent Supreme Court decision that rejected a District of Columbia Circuit rule that required heightened proof of improper intent for constitutional claims. *See Crawford–El v. Britton*, 523 U.S. 574, 118 S.Ct. 1584, 140 L.Ed.2d 759 (1998); *see also Helton v. Hawkins*, 12 F.Supp.2d 1276 (M.D.Ala.1998) (Thompson, J.) (explaining in detail how the Supreme Court holding in *Crawford* raises questions about the viability of the Eleventh Circuit's heightened pleading requirement). However, whether the Eleventh Circuit's heightened pleading requirement survives *Crawford–El v. Britton* is an issue this court need not reach. Under either the heightened pleading requirement or the regular pleading require-

ments, the plaintiffs' federal claims, as currently set forth, are insufficient, as the court will now explain.

■■■ In this case, as to whether the defendants' actions violated clearly established statutory or constitutional law, the plaintiffs have fulfilled their first obligation by asserting a cognizable claim. They have alleged that Haley, Hopper, and Jones have abridged their eighth-amendment right against cruel and unusual punishment by providing them with a level of medical care that demonstrated a deliberate indifference to their health and well-being; if proven, these allegations would indeed amount to a constitutional violation. *See, e.g., Estelle v. Gamble*, 429 U.S. at 97, 97 S.Ct. at 291; *McElligott v. Foley*, 182 F.3d 1248, 1254 (11th Cir.1999).

■■■ In order to satisfy the second component, that the right be clearly established, "[t]he contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violated that right." *Lowe v. Aldridge*, 958 F.2d 1565, 1570 (11th Cir.1992) (quoting *Anderson v. Creighton*, 483 U.S. 635, 640, 107 S.Ct. 3034, 3039, 97 L.Ed.2d 523 (1987)). "This is not to say that an official action is protected by qualified immunity unless the very action in question has previously been held unlawful, but it is to say that in the light of preexisting law, the unlawfulness must be apparent." *Id.* In determining the state of the law, this court must look to "the law originating in [the Eleventh] Circuit, as well as the Supreme Court, the courts of appeals, and the district courts." *Leeks v. Cunningham*, 997 F.2d 1330, 1333 (11th Cir.1993). Therefore, for the plaintiff to defeat the defendants' request for dismissal on qualified-immunity grounds, she must show that the right she is claiming was "clear, factually-defined, [and] well-recognized" at the time of the defendants' conduct. *Dartland v. Metropolitan Dade County*, 866 F.2d 1321, 1321 (11th Cir.1989); *see also Bates v. Hunt*, 3 F.3d 374, 379 (11th Cir.1993).

When the plaintiffs filed this lawsuit, the Supreme Court had established very clearly that a state's failure to provide medical care to a prisoner amounts to an eighth-amendment violation if the prisoner suffers a "serious deprivation" and the State exhibits a "deliberate indifference" to the prisoner's health and safety. *See Estelle,* 429 U.S. at 104, 97 S.Ct. at 291; *Campbell v. Sikes,* 169 F.3d 1353, 1363 (11th Cir. 1999). Though this standard was and continues to be very clearly articulated, the question of what kinds or levels of care demonstrate deliberate indifference remains much less clear. Thus, though Haley, Hopper, and Jones could reasonably be expected to know that they had a duty under the eighth amendment to provide some level of medical care to members of the plaintiff class, the exact amount of care that the constitution required was far less likely to be "clearly established."

As a result, the Eleventh Circuit has stated that in cases involving medical care for prisoners, qualified immunity should attach unless the state defendants "violated a clear and specific standard and ... similarly situated reasonable health care providers would have known that their actions violated [the plaintiff's] constitutional right." *Adams v. Poag,* 61 F.3d 1537, 1542 (11th Cir.1995); *see also Howell v. Evans,* 922 F.2d 712, 719 (11th Cir.1991), *vacated,* 931 F.2d 711 (11th Cir.1991), *reinstated by unpublished order* (June 24, 1991), cited in *Howell v. Burden,* 12 F.3d 190, 191 n. * (11th Cir.1994). Far from knowing that they had violated the clearly defined standard of care, Haley, Hopper, and Jones had every reason to believe that the medical services provided to members of the plaintiff class were within constitutionally permissible limits. In *Onishea,* The Eleventh Circuit had affirmed the district court, which held that the care provided to HIV-positive inmates in Alabama prisons did not offend the eighth amendment. *See Harris,* 941 F.2d at 1512.

Because commissioners Haley, Hopper, and Jones did not violate a clearly estab-

lished constitutional right, insofar as they could reasonably have believed that their actions were constitutionally permissible, the court concludes that they are entitled to qualified immunity. Haley, Hopper, and Jones are therefore due to be dismissed to the extent they have been sued in their individual capacities.

### D. *Liability Standard for CMS*

CMS contends that, though it is not immune from suit, the claims against it are nonetheless due to be dismissed because the plaintiffs have failed to allege all of the elements necessary to prove the heightened liability standard to which it should be held. CMS argues that, as a private entity contracting with the state to perform governmental functions, it is the legal equivalent of a municipality, and that the claims against it should therefore be evaluated according to the special rules for municipal liability. Having failed to satisfy these rules, CMS continues, the plaintiffs' case against it should be dismissed for failure to state a claim. Though the court agrees with CMS about the standard of liability to which it should be held, it rejects the contention that the plaintiffs' allegations are so lacking as to warrant dismissal.

First, the court agrees with CMS that it should be treated as a municipality for the purposes of the plaintiffs' § 1983 claims. Eleventh Circuit precedent clearly states that when a private corporation contracts with a state to perform a function traditionally within the province of the state government, including the provision of medical services to state inmates, then that corporation should be treated as a government entity and as a person acting under color of state law within the meaning of § 1983. *See Buckner v. Toro,* 116 F.3d 450, 452 (11th Cir.1997); *Howell,* 922 F.2d at 724.

As such, the private entity is not entitled to qualified immunity, but certain special requirements for liability do apply. *See Leatherman v. Tarrant County Narcotics*

*Intelligence and Coordination Unit,* 507 U.S. 163, 166, 113 S.Ct. 1160, 1162, 122 L.Ed.2d 517 (1993) (holding that municipalities do not enjoy qualified immunity, but that they "cannot be held liable unless a municipal policy or custom caused the constitutional injury"); *McDuffie v. Hopper,* 982 F.Supp. 817, 825 (M.D.Ala.1997) (Albritton, J.) ("[T]hose who contract to engage in government services without supervision, and for profit in a competitive marketplace, subject themselves to liability under § 1983 without the protections of immunity.") In order to prove that CMS should be liable, the plaintiffs would have to demonstrate that CMS itself directly caused the violation of their constitutional rights through their adoption of some official policy or practice. *See Monell v. Department of Social Services,* 436 U.S. 658, 695, 98 S.Ct. 2018, 2037–38, 56 L.Ed.2d 611 (1978); *Gilmere v. City of Atlanta,* 774 F.2d 1495, 1502–03 (11th Cir.1985). A theory of *respondeat superior* is not sufficient to support their § 1983 claim; assertions that the city was generally responsible for the actions of its doctors do not provide a direct enough link between the CMS's behavior and the inmate's injury to prove liability. *See Monell,* 436 U.S. at 691–92, 98 S.Ct. at 2036–37.

 In this case, the plaintiffs allege that the inadequacies in the medical care that they receive result directly from the policies and customs of CMS. Specifically, their allegations include that CMS has instituted a policy or custom of denying HIV-positive inmates certain necessary medications, improperly administering the medications that are provided, failing to respond to medical emergencies, and denying all care to inmates who are near death. Although the plaintiffs have not provided specific evidence demonstrating that such policies exist or that such practices are so wide-spread and entrenched as to constitute official "customs," at this stage the court must construe the allegations liberally in the plaintiffs' favor and assume that all of their allegations are true. Because

the plaintiffs could make out a valid claim if they did prove these allegations, the court concludes that the claims against CMS should not be dismissed.

### E. *Exhaustion of Administrative Remedies*

 With the above discussion, the court has concluded that the plaintiffs' ADA claim should be dismissed with prejudice, leaving only their eighth-amendment claim. With regard to the plaintiffs' remaining eighth-amendment claim, the court has further concluded that the DOC must be dismissed with prejudice and that the current and past DOC commissioners must be dismissed with prejudice to the extent they have been sued in their individual capacities at all and in their official capacities for damages. As a result, the only aspects of the plaintiffs' eighth-amendment claim remaining for consideration by the court are the injunctive relief sought against the current and past DOC commissioners in their official capacities and the full relief sought against CMS. However, as the court will now explain, this remaining aspect of the plaintiffs' eighth-amendment claim (which, as stated, is being asserted through 42 U.S.C.A. § 1983) must be dismissed as well, albeit without prejudice, because the plaintiffs have failed to exhaust the required prison administrative remedies.

The Prison Litigation Reform Act (PLRA), 42 U.S.C.A. § 1997e(a), provides that:

> "No action shall be brought with respect to prison conditions under section 1983 ... or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted."

The Eleventh Circuit has interpreted this provision strictly, stating that "[s]ince exhaustion is now a pre-condition to suit, the courts cannot simply waive those requirements where they determine they are fu-

tile or inadequate." *Alexander v. Hawk,* 159 F.3d 1321, 1325 (11th Cir.1998).

The plaintiffs in this case concede that they did not pursue any formal or informal administrative remedies to address their grievances prior to filing this lawsuit. However, they explain this failure by asserting that they never received any notice that there was a grievance procedure, or any information about how such a grievance might be filed, and that no administrative remedy was therefore "available" to them. The plaintiffs contend that, because the PLRA requires plaintiffs to pursue administrative remedies only "as are available," § 1997e(a) should not prevent them from pursuing their claims in federal court.

Though the court agrees that the PLRA does not require plaintiffs to exhaust those administrative remedies that are not actually made available to them, such was not the case here. The defendants have produced evidence demonstrating that CMS has put in place informal and formal grievance procedures at both of the facilities where members of the plaintiff class are incarcerated, and that inmates do routinely receive notice of the availability of such procedures. Every inmate receives a memo entitled "Access to Health Care Services" at his or her orientation with the facility's health care personnel. This memo clearly describes where inmates may obtain forms for filing both informal complaints and formal grievances, and to whom the completed forms should be returned. CMS also has in place a comprehensive system of tracking and addressing inmate complaints and grievances. This system has been in place since 1995, which was before all of the named plaintiffs entered Alabama's correctional system.

In addition to the grievance mechanism provided by CMS, the DOC inmate orientation manual describes its own inmate complaint procedure, which is available to address all types of inmate concerns, including but not limited to complaints in the area of medical care. This manual is given to inmates at their general orientation to the facility, and is also kept for inmates' use at the law library.

The plaintiffs have filed affidavits indicating that they personally were not informed and did not know that grievance procedures were in place to redress their complaints. However, they have not produced any evidence that effectively rebuts the defendants' evidence; the plaintiffs have failed to produce evidence, or even argue, that the grievance procedures and the mechanism for disseminating information to inmates about such procedures, were not in place on a system-wide basis. Absent such evidence, the court concludes that grievance procedures were "available" as defined under § 1997e(a) of the PLRA, and that the plaintiffs must exhaust these administrative remedies before bringing this lawsuit in federal court. In so doing, the court does not reach the question of whether administrative remedies would be "available" within the meaning of the PLRA in a case where the plaintiffs did provide evidence that the responsible correctional entity had failed on a system-wide basis, or otherwise in some substantial measure or significant way, to inform inmates about its grievance procedures.

The plaintiffs also suggest that they should not be required to exhaust administrative remedies, because such remedies were ineffective or inadequate. They point out in their supplemental response, for example, that the defendants have offered no evidence indicating their procedures ensure that inmate grievances are "appropriately addressed and resolved." The Eleventh Circuit has definitively stated, however, that the efficiency or adequacy of a defendant's grievance procedures has no bearing on whether such procedures are "available," or whether § 1997e(a) therefore requires plaintiffs to exhaust such procedures before filing suit in federal court. *See Alexander,* 159 F.3d at 1326 ("[T]he term 'administrative remedies as are available' does not mean an adequate administrative remedy.") Re-

gardless of their chances of success using the defendants' grievance procedures, the PLRA requires the plaintiffs to exhaust them. Therefore, the court will dismiss the plaintiffs' eighth-amendment claim without prejudice, so that they may pursue this claim with CMS and DOC officials. Only if they complete these procedures and are still dissatisfied with the quality of medical care they are receiving may they return to court with their eighth-amendment claim.

## IV. CONCLUSION

For the reasons stated above, the defendants' motions to dismiss will be granted, in part with prejudice and in part without prejudice. An appropriate judgment will be entered.

## ORDER

It is ORDERED that the fictitious defendants are dismissed in this case.

 The defendants argue that the fictitious defendants should be dismissed because fictitious-party pleading is not permitted in federal court. *See New v. Sports and Recreation, Inc.,* 114 F.3d 1092, 1094 n. 1 (11th Cir.1997) ("[F]ictitious party practice is not permitted in federal court."); *Wiggins v. Risk Enterprise Management Ltd.,* 14 F.Supp.2d 1279, 1279 n. 1 (M.D.Ala.1998) ("[T]here is no fictitious party practice in the Federal Courts."); *Floyd v. Allstate Insurance Co.,* 989 F.Supp. 1435, 1436 n. 1 (M.D.Ala.1998) ("[T]he fictitious Defendants named in Plaintiff's Complaint are due to be dismissed, there being no provision for fictitious party practice under federal law.").