**Marco NUNEZ, Plaintiff,**

v.

**Commissioner Glenn S. GOORD, of the New York State Department of Corrections, Superintendent C. Artuz, Deputy Superintendent Schneider, Sgt. Turso, Sgt. Schwartzman, Officer Suber, Officer Woodly, Officer Henschel, John Doe and Jane Doe, Officers in their individual and official capacities. Defendant.**

**No. 99 CIV. 4640(VM).**

United States District Court, S.D. New York.

Oct. 23, 2001.

Marco Nunez, New york City, pro se.

Ivan B. Rubin, Eliot Spitzer, Atty. Gen. of State of NY, New York City, for defendants.

## DECISION AND ORDER

MARRERO, District Judge.

Marco Nunez ("Nunez"), *pro se* and incarcerated, brought this action under 42 U.S.C. § 1983 against defendants Commissioner Glenn S. Goord, Superintendent Artuz, Deputy Superintendent Schneider, Sergeants Turso and Schwartzman, Officers Suber, Woodly, and Henschel and two unidentified Doe Officers (collectively, "Defendants"), all of whom served at all relevant times as officials of the New York State Department of Correctional Services ("DOCS"). Nunez alleges that Defendants (1) failed to protect him from inmate assaults, (2) engaged in retaliatory harassment, (3) used excessive force, (4) failed to train and supervise prison personnel and (5) were negligent under New York law. Defendants moved for summary judgment on all claims on the grounds that Nunez failed to exhaust administrative remedies prior to filing suit and that Nunez presented insufficient evidence in support of his § 1983 claims. For the reasons set forth below, Defendants' motion is granted in part and denied in part.

## I. BACKGROUND

At all relevant times, Nunez was incarcerated in DOCS's Green Haven Correctional Facility ("Green Haven"). The parties agree that on April 25, 1998, Nunez was stabbed by an unidentified inmate in the Green Haven Yard. Nunez was rushed to an outside hospital for treatment. Nunez claims that Green Haven failed to adequately monitor the Yard. On this point the parties agree that approximately 20 percent of the inmates were searched prior to entering the Yard and 10 guards were assigned and present on April 25, 1998 to oversee the Yard.

### A. NUNEZ'S FACTUAL ALLEGATIONS

Nunez claims that upon his return to Green Haven he was interviewed by Sergeants Schwartzman ("Schwartzman") and Turso ("Turso") who opined that the attack was gang-related and recommended that Nunez voluntarily enter protective custody, a form of solitary confinement. Nunez stated that he was not involved in any gang-related activity and refused to enter protective custody because the programs he needed for parole were not available there. Nunez claims he was ordered to stretch against the wall, and that when he tried to explain that his wounds prevented him from complying, Turso hit Nunez's head against the wall, causing injury to his eye. *See* Complaint ("Compl.") at

¶ 9. Nunez further alleged that Turso dragged Nunez down the stairs while unidentified officers, the Doe defendants, struck him. Nunez stated that he was returned to the hospital and into an isolation room for medical attention. Compl. at ¶ 9. He sustained injury to his eyebrow and cheek. Deposition of Marco Nunez ("Dep.") at 95–96.

Unhappy with his placement in protective custody after having been assaulted, Nunez alleges that he then filed a grievance regarding the assaults and that it was not answered. Compl. at ¶ 9; Dep. at 86. Nunez also appealed his involuntary protective custody hearing on procedural grounds. His appeal was granted in early July, 1998. Upon rehearing, however, his placement in involuntary protective custody was reaffirmed. Dep. at 98, 102–3.

Nunez claimed that Officer Suber ("Suber") and others conspired to retaliate against Nunez for his successful appeal. Compl. at ¶ 9(m)-(t). Nunez stated that "almost daily" during 1998 Suber would take action against him, including taking him to an "old hospital area" of the prison for beatings. Dep. at 130; Compl. at ¶ 9. In his deposition, Nunez specified that he suffered a beating in the old hospital area on July 16, 1998. Nunez claims that he was taken there from his cell by Suber, who punched Nunez in the rib cage and sides while Deputy Superintendent Schneider ("Schneider") watched. Dep. 130–35. Nunez suffered bruises as a result of Suber's blows. Dep. at 177. On that day two other inmates, known to Nunez only as "Smooth" and Perez, were also taken to the old hospital area and beaten by two unidentified officers. *Id.* at 131, 135, 149. None of the inmates filed grievances. *Id.* at 149. Nunez claims he does not know precisely what provoked Suber's actions. Dep. at 144–46, 155–56.

In a letter dated July 29, 1998 and addressed to Superintendent Artuz ("Artuz")

Nunez complained about the July 16 beating. Defendants allege that this letter never reached Artuz. *See* Affidavit of James Lagoi, dated August 27, 2000 ("Lagoi Aff.") at ¶ 3. Even though he received no response, Nunez did not pursue that complaint any further. Dep. at 88, 126–130. Nunez said he did not file additional grievances, claiming futility of such action. In his view, the grievance procedure, which he had utilized in the past, did not function. Compl. at ¶ 9(v); Dep. at 172–75.

In the July 29, 1998 letter Nunez also complained that a photograph of a family member was wrongly taken from him during a retaliatory search of his cell on July 28, 1998. Again, Nunez filed no grievance and pursued the matter no further. Dep. at 136–37.

Nunez alleges that Scwartzman and Officers Woodly ("Woodly"), Zito ("Zito") and Henschel ("Henschel") fabricated misbehavior reports in order to cover up their failure to protect him. Compl. at ¶ 9. In support of this claim, Nunez stated that, on November 17, 1998, another inmate bleeding from self-inflicted wounds approached and engaged Nunez in an altercation. Compl. ¶ 9(w). Woodly observed the altercation and initially filed administrative charges against him, per Schwartzman's command. After an investigation of the matter, it was found that the assailant ambushed Nunez and Nunez did not fight back. Accordingly, the fighting charges against Nunez were dismissed. *Id.* at ¶ 9.

The final incident Nunez describes occurred on December 1, 1998. An inmate allegedly assaulted Nunez in front of Zito. Zito observed the attack, without interfering in it, and made a report in which he charged Nunez with fighting. Compl. at ¶ 11. The charge was dismissed later by Zito's testimony. Dep. at 162. Nunez be-

lieves that Zito's conduct represents a failure to protect him. Dep. at 160.

Nunez complains that all named officers and their supervisors were acting pursuant to orders and directives from Commissioner Goord ("Goord"). Compl. at ¶ 16. Moreover, Nunez alleges that Henschel, in furtherance of a retaliatory conspiracy against him for suspected participation in gang activities, selectively enforced rules and singled out Nunez for sanctions. Compl. at ¶ 9(w); Dep. at 121–23. Nunez does not specify particular acts. According to Nunez, as a proximate result of Defendants' conduct he has suffered great bodily harm, including injuries to his arm, neck, back, head and body, and suffered emotional pain and distress. Compl. at ¶¶ 22–23.

## B. *DEFENDANTS' MOTION FOR SUMMARY JUDGMENT*

Defendants filed a motion for summary judgment on the grounds that Nunez failed to exhaust administrative remedies or submit facts in support of his claims. *See* Defendants' Memorandum of Law in Support of their Motion for Summary Judgment (hereinafter "Defs. Memo") at 2. Defendants argue that the Prison Litigation Reform Act of 1996 ("PLRA"), 42 U.S.C. § 1997e(a), applies to all claims regarding conditions of confinement and requires a prisoner to follow formal grievance procedures before filing suit in federal court. Defendants assert that Nunez did not file any grievances with respect to any of his claims, including excessive force. In support of the failure-to-exhaust defense, Defendants submitted the transcript of Nunez's deposition. During that proceeding Nunez stated that he did not in fact file any grievances with respect to the conduct alleged in his complaint. Dep. at 81–84, 87–88, 127–29.

Factually, Defendants assert that Nunez presented insufficient evidence in support of his § 1983 claims. Defendants also submitted evidence in opposition to these claims. First, Defendants do not contest that Nunez was assaulted by a fellow inmate on April 25, 1998. As to subsequent events, Defendants' version of events varies from Nunez's. According to them, on May 5, 1998, Schwartzman interviewed Nunez and recommended that he voluntarily enter protective custody. Nunez refused. Defs. Memo at 3. On May 6, 1998, Schwartzman served Nunez with an involuntary protective custody recommendation. Nunez again refused to enter protective custody and "a disturbance ensued" during which time Nunez was directed to put his hands on the wall and be frisked. Faced with Nunez's refusal to comply, officers physically "placed plaintiff against the wall". *Id.* at 4. The following day, May 7, 1998, Nunez was placed in involuntary protective custody.

As evidence, Defendants submitted the "Report Packet of Disciplinary Hearing Disposition, Hearing date May 11, 1998" containing official memoranda, reports and findings regarding the May 6, 1998 incident. Multiple officers filed reports. According to Officer Limaye, after Nunez was served with an involuntary protective custody paper, Limaye ordered him to move to the isolation room. Nunez refused and entered the day room instead. Nunez was yelling, did not immediately obey direct orders to exit the day room and "did not comply with [p]at frisking and refused to put his hands on the wall prior to frisking and turned around at Sgt Turso and was physically moved against the wall. Inmate Nunez was escorted to the Clinic." Inmate Misbehavior Report dated 6 May 98. Additional detail is provided by Turso, who stated that it was corrections officers "Rhyders and Clerc [who] grabbed the inmate and pushed inmate Nunez to the wall," and that Nunez "received an injury to his left [b]row, a direct result of being

pushed to the wall [a]fter he refused to be frisked, and turned [t]owards staff." Memorandum from Sergeant Turso to Lieutenant Russett (May 6, 1998).

Corrections Officer Salzer stated he also ordered Nunez to enter involuntary protective custody after Nunez was served with the recommendation, and that Nunez disobeyed. Further, Salzer stated that Nunez was "yelling in a loud manner" in the day room. Salzer stated that when Turso arrived and ordered Nunez to put his hands on the wall, Nunez turned towards Turso and "was then forced back against the wall and placed under control." Memorandum from Corrections Officer K. Salzer to Sergeant Turso (May 6, 1998). At the disciplinary hearing Nunez "admitted to the acts" and "said that he is sorry that he did this." Disciplinary Hearing Disposition dated May 10, 1998. Nunez attributed his behavior to a prior promise that he would not be "locked up" in the isolation of protective custody, and to his recent injuries and medication. *Id.* Nunez did not identify Corrections Officers Clerc, Limaye, Rhyders or Salzer as defendants in this action. Moreover, Nunez has never identified the Doe Defendants.

Defendants' version of the November 17, 1998 incident provides additional details that do not vary in a material way from Nunez's account. *See* Defendants' Memorandum of Law in Support of Motion for Summary Judgement (hereinafter "Memo") at 5. Defendants submit documents comprising the "Unusual Incident report packet, UI 98–0214, incident date November 17, 1998." Nunez's assailant stated that he "had cut himself to get inmates Perez and Nunez off the A–1 unit." Inmate Misbehavior Report dated November 25, 1998. While the charges against Nunez were dropped, the other inmate was charged with lying, inflicting bodily harm on himself, and disruption. *Id.*

In addition, Defendants submitted the affidavit of Thomas Testo ("Testo"), DOCS's Director of Training, regarding the safety and administrative responsibilities corrections officers have when inmates fight. Testo opined that Woodly had no choice but to file a misbehavior report on Nunez in response to the November 17, 1998 incident. *See* Affidavit of Thomas Testo dated August 30, 2000 at ¶ 9.

Regarding the December 1, 1998 incident, Defendants submit only Nunez's deposition regarding Zito's actions that day.

Regardless of any factual inconsistencies between Nunez's version and their own, Defendants argue that Nunez's claims lack merit as to Goord and Artuz in particular because Nunez presented no facts showing the essential element of "personal involvement" as to them. First, Defendants point out that Nunez presented no documentary or testimonial evidence, aside from his own assertions, that Goord or Artuz had knowledge of risks to Nunez's safety. Defs. Memo at 16. Likewise, only Nunez's general assertions support his allegation that Goord or Artuz was grossly negligent in supervising, or had notice of Nunez's complaints and failed to act. *Id.* at 17.

Finally, Defendants argue that there no merit to the conspiracy and harassment claims in retaliation of Nunez's successful appeal of his May 6, 1998 involuntary protective custody determination or suspected gang activity. Defs. Memo at 18. As to the conduct of Woodly, Defendants argue that, on November 17, 1998, Woodly acted in compliance with DOCS rules and therefore his conduct was neither retaliatory nor evidence of any retaliatory conspiracy or intent. *Id.* at 18–19. Similarly, Defendants urge that Schwartzman did not have any personal involvement in the events giving rise to the second cause of action, and all his acts were performed in the line of his duties. *Id.* at 19–20. Accordingly,

Defendants urge that in the absence of evidence showing discipline or injury imposed as retaliation, Nunez's claim should be dismissed. *Id.* at 21.

### C. *NUNEZ'S OPPOSITION TO SUMMARY JUDGMENT MOTION*

Responding to Defendants' motion for summary judgment, Nunez contends that DOCS employees intercepted and destroyed grievances and letters of complaint that he attempted to file. *See* Affidavit in Opposition to Defendant's Motion for Summary Judgement dated October 16, 2000, ("Nunez Aff.") at ¶ 2. On the basis of DOCS employees' interference with the grievance process, Nunez argues that he did not fail to exhaust administrative remedies. *Id.* at ¶ 3. Nunez also countered that security procedures established at the entrance to the yard and Defendant's supervisory positions constituted inadequate safety measures. *Id.* at ¶ 4. Nunez alleges that he personally handed grievances to the inmate grievance clerk, at which point they disappeared. *Id.* at ¶ 6. Finally, Nunez asserts that his letter to Artuz was either received and ignored, or intercepted and destroyed by DOCS employees. *Id.* at ¶ 7.

Defendants counter that Nunez's explanation for not exhausting administrative remedies is contrary to his testimony during the deposition, and therefore should be disregarded. *See* Reply Memorandum in Support of Defendants' Motion for Summary Judgment ("Reply Memo") at 1–6. In addition, Defendants point out that Nunez testified that he did not inform anyone of any threat of attack and that Nunez's complaints regarding "general problems" is legally insufficient to show the element of notice. *Id.* at 6. Defendants also maintain that Nunez's opinion on appropriate security measures is without merit, and that Nunez fails to refute the uncontradicted facts in any material way. *Id.* at 10.

## II. *DISCUSSION*

### A. *SUMMARY JUDGMENT STANDARD OF REVIEW*

■ A motion for summary judgment should be granted where "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue of material fact and that the moving party is entitled to a judgment as a matter of law." FED. R. CIV. P. 56(c); *Celotex Corp. v. Catrett,* 477 U.S. 317, 322–23, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). A district court is not to "weigh the evidence and determine the truth of the matter, but to determine whether there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 249, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). In deciding whether a genuine issue exists, a district court must "examine the evidence in the light most favorable to the party opposing the motion, and resolve ambiguities and draw reasonable inferences against the moving party." *In re Chateaugay Corp.,* 10 F.3d 944, 957 (2d Cir. 1993). Where, as here, a party appears *pro se,* the courts are required to broadly construe *pro se* pleadings and interpret them "to raise the strongest arguments that they suggest." *Graham v. Henderson,* 89 F.3d 75, 79 (2d Cir.1996).

Nonetheless, summary judgment is mandated "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex,* 477 U.S. at 322, 106 S.Ct. 2548. Furthermore, a plaintiff must "come forward with enough evidence to support a jury verdict in [his] favor, and the motion will not be defeated merely . . . on the basis of conjecture and surmise." *Trans Sport, Inc. v. Starter Sportswear, Inc.,* 964 F.2d 186, 188 (2d Cir.1992).

Here, Defendants argue that they are entitled to summary judgment as to all claims on the grounds of Nunez's failure to exhaust administrative remedies. In addition, Defendants point out that Nunez has failed to set forth facts showing that any of the Defendants were on notice of (1) specific danger to Nunez, an essential element of the failure to protect claim, and (2) personal involvement, an essential element of the § 1983 claims against Goord and Artuz. Finally, Defendants state that Nunez presents no "facts" in support of his retaliation claim and that Woodly and Henschel satisfactorily performed their duties at all dates in question. The Court considers each argument in turn.

## B. *EXHAUSTION OF ADMINISTRATIVE REMEDIES*

As a general matter, exhaustion of administrative remedies is not a prerequisite to maintaining an action under § 1983 in the federal courts. *See Patsy v. Board of Regents*, 457 U.S. 496, 508, 102 S.Ct. 2557, 73 L.Ed.2d 172 (1982); *Doe v. Pfrommer*, 148 F.3d 73, 78 (2d Cir.1998). Nevertheless, Congress, in enacting the PLRA, has carved out a specific exception to the general non-exhaustion rule. *See* 42 U.S.C. § 1997e(a); *Nussle v. Willette*, 224 F.3d 95, 98 (2d Cir.2000) *petition for cert. granted sub nom., Porter v. Nussle*, —— U.S. ——, 121 S.Ct. 2213, 150 L.Ed.2d 207 (2001). The amended PLRA broadened the scope of § 1997e(a)[1] by "affirmatively *requiring* all prisoners to exhaust administrative remedies" prior to filing claims regarding "prison conditions" in federal court and eliminating the prerequisite showing by the Attorney General of the "effectiveness" of the administrative reme-

dies. *See Nussle*, 224 F.3d at 98 (emphasis in original).

Courts have struggled with the applicability of the amended § 1997e(a) to claims asserting excessive force, retaliation, and failure to protect. *See, e.g. Liner v. Goord*, 196 F.3d 132, 135 (2d Cir.1999) (noting split in authority as to whether the exhaustion requirement encompasses particular claims of excessive force). Whether or not these claims fall under the mandatory exhaustion requirement turns on whether these claims fall within the category of "prison conditions." *Nussle*, 224 F.3d at 101.

Although the Supreme Court has yet to speak on the issue, the growing case law in this Circuit suggests that the term "prison conditions" is meant to encompass those matters experienced by the prison population as a whole. *See Lawrence v. Goord*, 238 F.3d 182, 185 (2d Cir.2001), *petition for cert. filed* April 17, 2001; *see also Marvin v. Goord*, 255 F.3d 40, 42 (2d Cir.2001) ("a prisoner is required to exhaust administrative remedies pursuant to § 1997e(a) only if the challenged conduct on the part of correctional employees was conduct which was either clearly mandated by a prison policy or undertaken pursuant to a systemic practice."). Accordingly, individual grievances asserting claims unique to a particular prisoner are not subject to the exhaustion requirements of § 1997e(a). Some claims of excessive force or retaliation may be particularized and thus outside the scope of § 1997e(a)'s exhaustion requirement. *See Lawrence*, 238 F.3d at 182 (particularized instance of retaliatory conduct not covered by § 1997e(a)); *Marvin*, 255 F.3d at 40 (retaliation claim not

---

**1.** Section § 1997e(a) provides in pertinent part as follows: "(a) Applicability of administrative remedies. No action shall be brought with respect to prison conditions under section 1979 of the Revised Statutes of the Unit-

ed States (42 U.S.C.1983), or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted."

covered by § 1997e(a)). The Court reviews below Defendants' assertions, as affirmative defenses, Nunez's failure to exhaust administrative remedies as to each of his claims.

### 1. *Failure to Protect*

██ Nunez's claim under § 1983 asserts that Defendants failed to protect him from his fellow inmates' assaults. As Nunez's failure-to-protect claim concerns the conditions of his confinement, it is subject to § 1997e(a)'s exhaustion requirement. Even though Nunez's claim arises from particular injuries based on Defendant's alleged failure to prevent repeated attacks on him, Compl. at ¶ 13, his essential allegation is that DOCS does not properly supervise its Green Haven facility. *See Santiago v. Meinsen,* 89 F.Supp.2d 435, 440 (S.D.N.Y.2000) (citing *Soto v. Elston,* 993 F.Supp. 163 (W.D.N.Y.1998), *Farmer v. Brennan,* 511 U.S. 825, 114 S.Ct. 1970, 128 L.Ed.2d 811 (1994), and *Midgette v. John Doe,* No. 96 Civ. 6790(HB), 1997 WL 634280 (S.D.N.Y. Oct.15, 1997)). These precedents are consistent with the more recent trend in this Circuit emphasizing the distinction between individualized and systemic claims: where the wrong alleged systemically affected the prison population as a whole, the exhaustion requirement of § 1997e(a) applies, even though the injury was particular. *See Gray v. Murry,* No. 99 Civ. 2767(WHP), 2001 WL 826088 (S.D.N.Y. July 19, 2001).

Nunez, it appears, did not exhaust the available administrative remedies to address his assault claims. Nunez was aware of DOCS's grievance procedure, and previously had availed himself of it, to file an excessive force claim at a different facility. *See* Dep. at 81–84. In addition, at Green Haven, Nunez did file a grievance in May 1998 regarding a denial of painkillers, which is not at issue in this action. *See* Dep. at 82–85. Nunez's failure to file a grievance in connection with the incidents

on April 25, May 6–7, November 17, and December 1, 1998 incidents is decisive as regards Nunez's failure-to-protect claim. *See* Dep. at 84, 87; Lagoi Aff. at ¶¶ 2, 3. Further, instead of filing a grievance, Nunez wrote a letter to Artuz complaining about the July 16, 1998 incident. *See* Dep. at 87–88, 127–29. Nunez received no response and did not follow up. *See id.;* Lagoi Aff. at ¶¶ 7–10.

██ Nunez claims that he did not file formal grievances because it was futile. First, Nunez alleges that interception of the mail was "the practice of certain officers" who would then destroy grievances to "suit their needs, purposes, or personal concerns." Nunez Aff. at ¶ 5. Second, Nunez alternately alleges that the grievance clerk did not visit his unit during the relevant period of 1998, *see* Dep. at 93–94, or that his "numerous" grievances were lost at the Grievance Committee Office, *see* Nunez Aff. at 6, or destroyed by corrections officers. *See* Plaintiff's Rule 56 .1 Statement of Contested Facts in Opposition to Defendant's Motion for Summary Judgment, at ¶¶ 1, 3.

Section 1997e(a) contains no exemption for cause to the requirement that administrative remedies be exhausted. *See* 42 U.S.C. § 1997e. As previously discussed, Congress eliminated the "effectiveness" prerequisite to § 1997e(a) defenses, which indicates Congress's intent to preclude futility or other exceptions from the exhaustion requirement. *See also Booth v. Churner,* 531 U.S. 956, 121 S.Ct. 377, 148 L.Ed.2d 291 (2000) (so long as a prison administrative process has some authority to take action in response to an inmate grievance, the PLRA exhaustion requirements apply); *Santiago,* 89 F.Supp.2d at 435. Moreover, Nunez's case does not present the type of facts that might warrant an exception to § 1997e(a) by judicial interpretation. First, the language of

§ 1997(e) is unambiguous in this respect and offers no grounds for an exception. Second, Nunez was aware of DOCS's grievance procedures and used them during 1998 and 1999 at Green Haven. Also, Nunez's allegations stand alone and unsupported. Defendants submitted evidence that there is no record of any letter from Nunez reaching the Green Haven Superintendent, and that the Grievance Coordinator is "reasonably certain" that routine visits were made at least twice a week to pick up grievances at the unit where Nunez was housed. *See* Lagoi Aff. at ¶¶ 7–10. Finally, Nunez admitted that he did nothing to follow up on his letter to Artuz.

Accordingly, because the exhaustion requirement applies, and because Nunez admits that he did not even attempt to comply with formal grievance procedures regarding his failure to protect claim, the State is entitled to summary judgment on Nunez's failure-to-protect claim.

#### 2. *Retaliatory Conduct*

██ An inmate's claim for particularized instances of retaliation falls outside the purview of § 1997e(a). *See Lawrence,* 238 F.3d at 186; *see also Marvin* 255 F.3d at 43. In *Lawrence,* plaintiff alleged that the defendant corrections officer issued him a series of unwarranted misbehavior reports in retaliation for plaintiff's previous complaint to prison authorities regarding the officer's misconduct. Plaintiff never filed a grievance. *See Lawrence* at 184. In addition, plaintiff claimed that the grievance coordinator and prison superintendent ticketed him without cause in retaliation for his previous complaints that they failed to comply with prison grievance policies. *See id.* at 184. The Second Circuit found, first, that administrative remedies were available under New York law. Then, following *Nussle,* it found that the plaintiff's allegations were of particularized instances of force and therefore outside the text of § 1997e(a). *See id.* at 185–86.

Furthermore, the policy underlying the exhaustion requirement—that administrators and policy makers be given an opportunity to correct their behavior—was not at issue. *See id.*

Here, however, Defendants urge that the scope of Nunez's allegations—that there was an ongoing retaliatory conspiracy against him among corrections officers begun in May 1998 and lasting through the present—renders the claim systemic. *See* Letter from Ivan Rubin, Assistant Attorney General for the State of New York, dated June 28, 2001 (hereinafter "Rubin Letter"). As such, Defendants contend, the exhaustion requirement of § 1997e(a) should apply, and entitle Defendants to summary judgment. *See id.*

The Court does not find Defendants' argument persuasive. Similar to the situation in *Lawrence,* Nunez alleges that Defendants committed specific retaliatory acts targeting him in particular. The policy underlying § 1997e(a) is not implicated by Nunez's claims. Defendants are not entitled to summary judgment on Nunez's retaliation claim on grounds of exhaustion. Nevertheless, the Court concludes that Defendants are entitled to summary judgement on this claim on other grounds set forth below. *See* discussion *infra* at II(C)(2).

#### 3. *Excessive Force*

██ Excessive force claims, following *Nussle,* 224 F.3d at 95, do not require exhaustion of administrative remedies, as required by § 1997e(a), prior to a prisoner filing a § 1983 action. However, as previously discussed, case law subsequent to *Nussle* has refined the analysis to distinguish between particularized and systemic claims. *See Marvin,* 255 F.3d 40 (remanding dismissal of an excessive force claim for failure to exhaust). Accordingly, this

Court will consider Nunez's claim under the more recent case law.

Defendants again argue that the breadth of Nunez's claim,—that excessive force was used against him on a repeated basis with the knowledge and tacit approval of supervisors and prison administrators— renders his complaint systematic. *See* Rubin Letter. The Court is not persuaded by Defendants' argument because Nunez's excessive force claims are based on alleged assaults experienced by Nunez alone. Accordingly, Nunez's claim alleging excessive use of force survives summary judgment and will be discussed further below. *See* discussion *infra* at II(C)(3).

### 4. *Negligence Under New York State Law*

In addition to his § 1983 claims, Nunez sues all Defendants for negligence under New York State law based on the assaults he endured from other inmates. By its own terms, § 1997e(a) only applies to claims made pursuant to § 1983 and regarding "prison conditions." As Nunez's cause of action alleging negligence does not invoke § 1983, or any other federal law, it is not subject to § 1997e(a)'s exhaustion requirement. Defendant's conclusory statements that all claims should be dismissed for failure to exhaust fails and Nunez's negligence claim survives summary judgment.

### C. *SUFFICIENCY OF THE EVIDENCE*

#### 1. *Failure to Protect*

Even if Nunez had exhausted available administrative remedies, he has failed to submit facts sufficient to make out a *prima facie* case in his failure-to-protect claim.

A prisoner's claim for failure to protect invokes the Eighth Amendment, and thereby comes within the purview of § 1983. *See Farmer v. Brennan*, 511 U.S.

825, 832, 114 S.Ct. 1970, 128 L.Ed.2d 811 (1994) (citing *Rhodes v. Chapman*, 452 U.S. 337, 349, 101 S.Ct. 2392, 69 L.Ed.2d 59 (1981) and *Helling v. McKinney*, 509 U.S. 25, 31, 113 S.Ct. 2475, 125 L.Ed.2d 22 (1993)). The Eighth Amendment imposes a duty on prison officials to "take reasonable measures to guarantee safety of the inmates." *Id.* at 832, 114 S.Ct. 1970 (citing *Hudson v. Palmer*, 468 U.S. 517, 526–27, 104 S.Ct. 3194, 82 L.Ed.2d 393 (1984)). In particular, a prison official has a duty to protect prisoners from violence from other prisoners. *See id.* at 825, 114 S.Ct. 1970. While prison conditions may be harsh, being violently assaulted in prison simply is not "part of the penalty that criminal offenders pay for their offenses against society." *Id.* at 833, 114 S.Ct. 1970.

However, not every assault by a fellow prisoner translates into a Constitutional violation. *See id.* at 834, 114 S.Ct. 1970. Rather, a prisoner must first show that he was "incarcerated under conditions posing a substantial risk of serious harm." *Id.* at 827, 114 S.Ct. 1970. A prisoner must also show the prison official showed "deliberate indifference" to the prisoner's health or safety. Deliberate indifference exists where "the official knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of fact from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Id.* 511 U.S. at 837, 114 S.Ct. 1970.

Taken together, Nunez's complaint, deposition testimony and affidavits do not provide any facts supporting the element of "deliberate indifference." At best, Nunez told prison authorities that he was "experiencing problems and feared that he was going to have trouble." Nunez Aff. at ¶ 15. In fact, on the record before the Court, not even Nunez, by his own admis-

sion, was aware of specific threats or risks. *See* Dep. at 25–26. On this basis, this Court finds that Nunez has not presented sufficient facts showing "deliberate indifference" to survive summary judgment. Accordingly, Defendants' motion for summary judgment with regard to Nunez's § 1983 failure-to-protect claim is granted.

### 2. *Retaliatory Conduct*

A prisoner has "a right not to be subjected to false misconduct charges in retaliation for his exercise of a constitutional right." *Harris v. Keane*, 962 F.Supp. 397, 405 (S.D.N.Y.1997) (citing *Jones v. Coughlin*, 45 F.3d 677, 679–80 (2d Cir.1995) and *Franco v. Kelly*, 854 F.2d 584, 590 (2d Cir.1988)). To survive a motion for summary judgment on a retaliation claim, a plaintiff must show that "(1) the disciplined conduct was constitutionally protected, and (2) his punishment was motivated by his conduct, in whole or in part." *Graham v. Henderson*, 89 F.3d 75, 79 (2d Cir.1996). The plaintiff's burden is higher because, given the ease with which a retaliation claim may be fabricated, courts must review such claims with skepticism and may grant summary judgment motion if the claim appears insubstantial. *See Flaherty v. Coughlin*, 713 F.2d 10, 13 (2d Cir. 1983); *Colon v. Coughlin*, 58 F.3d 865, 872 (2d Cir.1995) (combination of direct and circumstantial evidence sufficient to survive summary judgment). Temporal evidence, alone, is insufficient to support a claim of retaliation. *See Colon*, 58 F.3d at 865.

Nunez alleges that "the defendants" conspired together to retaliate against Nunez for his successful appeal of the involuntary protective custody determination in July 1998. *See* Dep. at 97–100, 111; Aff. at ¶ 20. Nunez also claims "the defendants" retaliated against him because they suspected he was involved in gang related activity.[2] *See* Dep. at 113.

Factually, Nunez's allegations of retaliation and conspiracy stand alone, and as such are too "unsupported, speculative and conclusory" to survive summary judgment. *Boddie v. Schnieder*, 105 F.3d 857, 862 (2d Cir.1997) (citing *Leon v. Murphy*, 988 F.2d 303, 311 (2d Cir.1993)). Nunez has failed to introduce evidence, aside from his own speculation, connecting Defendants' conduct with his appeal or suspected gang activity. On the record, only a temporal connection exists between Nunez's alleged July 16, 2001 beating and his successful appeal. Although Nunez identified a beginning to the alleged conspiracy (July 1998), he does not present any other specific or direct evidence supporting the existence of such a conspiracy.

In particular, Nunez presents no probative evidence of the essential element of a conspiracy: an agreement among "the defendants" to retaliate against him. In addition, Nunez's assertions that he made "numerous grievances" that were "taken and destroyed by someone in the employ of the Department of Correctional Services," Nunez Aff. at ¶ 1, lacks "sufficient factual specificity to create a triable issue of fact." *Colon*, 58 F.3d at 874. For example, Nunez does not identify the dates on which he sent the "numerous grievances" or the subject matter of the grievances. Further, his allegations that Green Haven personnel regularly destroy in-

---

**2.** While it is true that prisoners have a constitutional "right of access to the courts and to petition the government for the redress of grievances, and prison officials may not retaliate against prisoners for the exercise of that right," *Colon*, 58 F.3d at 872, the Court does not decide in the case at hand whether an appeal of an involuntary protective custody hearing is a constitutional right. Similarly, the Court does not address whether a prisoner's membership or participation in an unauthorized group is constitutionally protected. Rather, Nunez's claim is dismissed on evidentiary grounds.

mates grievances is not consistent with his own testimony, *see* Dep. 172–77, and speculative. Nunez's assertions, standing alone, do not provide sufficient evidence of retaliation.

Nunez has also failed to provide sufficient evidence to substantiate his claim that he was subject to an unreasonable cell search in retaliation for his successful appeal on July 25, 1998. Nunez admitted during his deposition that searches were common events and that the presence of a supervisor during a search was not extraordinary. *See* Dep. at 108, 135–38. In his July 29, 1998 letter to Artuz, Nunez made no mention that the cell search had any relationship to his appeal. Only the date, July 28, 1998, gives the cell search any connection to the appeal. But that connection by itself does not sustain a claim of retaliation. Accordingly, Nunez provided insufficient evidence upon which a trier of fact could reasonably find that the cell search was retaliatory.

In the absence of any additional direct or circumstantial evidence to support Nunez's speculative allegations, the Court grants Defendant's motion for summary judgment on the retaliation claim.

3. *Excessive Use of Force*

It is unclear whether Defendants seek summary judgment on the basis of insufficient evidence for Nunez's § 1983 claim alleging excessive force in violation of the Eighth Amendment. In light of Nunez's *pro se* status, this Court construes his complaint with due leniency. On the record now before the Court, Defendants' motion must be denied.

The Eighth Amendment, which applies to the states through the Due Process Clause of the Fourteenth Amendment, *see Robinson v. California,* 370 U.S. 660, 666, 82 S.Ct. 1417, 8 L.Ed.2d 758 (1962), prohibits the infliction of "cruel and unusual punishments." U.S. Const.

Amend. VIII. The appropriate inquiry under the Eighth Amendment consists of both "subjective" and "objective" components. *Blyden v. Mancusi,* 186 F.3d 252, 262 (2d Cir.1999). The subjective component relates to whether the defendant "had a wanton state of mind" when engaging in the conduct in question. *Id.* In an excessive force case, the wantonness inquiry turns on "whether force was applied in good faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm." *Hudson v. McMillian,* 503 U.S. 1, 6–7, 112 S.Ct. 995, 117 L.Ed.2d 156 (1992). The Second Circuit explained that "Hudson did not limit liability to that subset of cases where 'malice is present' but rather 'simply makes clear that excessive force is defined as force not applied in good faith.'" *Blyden,* 186 F.3d at 263 (quoting *Hudson,* 503 U.S. at 7, 112 S.Ct. 995).

The objective component relates to the seriousness of injury inflicted by prison officials. *Davidson v. Flynn,* 32 F.3d 27, 29 (2d Cir.1994). The objective component is "context specific, turning upon 'contemporary standards of decency.'" *Griffin v. Crippen,* 193 F.3d 89, 91 (2d Cir.1999) (citations omitted).

However, prison officials' malicious and sadistic use of force is a *per se* violation of the Eighth Amendment, because that conduct, regardless of injury, "always" violates contemporary standards of decency. *Hudson,* 503 U.S. at 9, 112 S.Ct. 995; *Blyden,* 186 F.3d at 263. At the same time, "a *de minimis* use of force will rarely suffice to state a constitutional claim." *Griffin,* 193 F.3d at 90 (quoting *Romano v. Howarth,* 998 F.2d 101, 105 (2d Cir.1993)). "Not every push or shove, even if it may later seem unnecessary in the peace of the judge's chambers, violates prisoner's constitutional rights." *Id.*

The record contains some evidence in support of Nunez's excessive force claim. By his own affidavit and testimony, Nunez alleges that as a result of his refusal to sign into protective custody, Turso hit plaintiff's head against the wall, and dragged Nunez, causing injuries. The Inmate Misbehavior Reports dated May 6, 1998 and Disciplinary Hearing documents dated May 10, 1998, provide support that Nunez was injured in an altercation involving Turso. This evidence is not contradicted by Nunez's testimony that only his toes were actually "dragged". *See* Dep. at 72. At the same time, the record reflects that while Nunez admitted and apologized for his refusals to obey orders, he contended that he had reason to be upset. In addition, Nunez alleges that he was beaten regularly in the "old hospital area" during 1998. In particular, Nunez described a beating he received on July 16, 1998 from Suber, under Schneider's observation. Nunez claims to have been bruised by these assaults. *See* Dep. at 178. Defendants submitted no facts in opposition of Nunez's allegations regarding the assaults involving Suber and Schneider.

Although the evidence is thin, there are genuine issues of material fact concerning whether any use of force by Turso, Suber, and Schneider on the dates in question was reasonably related to, and adequate to address, legitimate security or safety concerns, or instead was excessive, or whether it was inflicted maliciously or in good faith. In this Court's opinion, reasonable jurors could conclude that the uses of force Nunez alleges occurred on May 7 and July 17, 1998, if established by substantial evidence, were more than *de minimus*, were excessive, or were committed maliciously. For these reasons, Nunez's excessive use of force claim against Suber, Turso and Schneider survives summary judgment.

■■■ However, on the record before the Court it is not clear whether Nunez's ex-

cessive force claim is intended to apply against either Henschel, Schwartzman or Woodly and Defendants' motion does not address specific opposition to such a claim. The Court notes, however, that neither Nunez's complaint nor opposition to Defendants' summary judgment motion, presents any particular allegations or evidence concerning use of excessive force by these defendants.

■■■ Regardless of whether or not Defendants made their motion for summary judgment on this particular ground, the Court has the power to dismiss a complaint *sua sponte* for failure to state a claim. *See Leonhard v. United States*, 633 F.2d 599, 609 n. 11 (2d Cir.1980) (citing *Robins v. Rarback*, 325 F.2d 929 (2d Cir. 1963), *cert. denied*, 379 U.S. 974, 85 S.Ct. 670, 13 L.Ed.2d 565 (1965); 5 C. Wright & A. Miller, *Federal Practice and Procedure* § 1357 at 593 (1969)). However, the party defending a *sua sponte* dismissal ought to have an opportunity to be heard before issuance of the order. *See Lewis v. New York*, 547 F.2d 4, 5–6 & n. 4 (2d Cir.1976), *aff'd* 476 U.S. 409, 106 S.Ct. 1922, 90 L.Ed.2d 413 (1986). Here, Defendants' motion for summary judgment against "the complaint," Defs. Memo at 2, provided Nunez with notice and an opportunity to defend his excessive force claim. Yet even after the rigorous briefing associated with a motion for summary judgment, there appears no allegation or evidence to support Nunez's excessive force claims against Schwartzman, Woodly and Henschel. Accordingly, this Court dismisses Nunez's excessive force claim against Schwartzman, Woodly and Henschel.

### 4. *Failure to Supervise and Train Correction Officers*

■■■ Nunez claims that Goord, and his "agents, servants and employees" failed to train, hire, supervise, discipline,

inspect and dismiss correction officers, in violation of § 1983. As a result these failings, according to Nunez, he was deprived of his Eighth and Fourteenth Amendment rights. *See* Compl. at ¶ 14. Personal involvement of defendants in an alleged constitutional deprivation is a prerequisite to an award of damages under § 1983. *See Colon,* 58 F.3d at 873. Personal involvement may be shown by evidence that (1) the defendant participated directly in the alleged constitutional violation, (2) was informed of the violation and failed to remedy the wrong, (3) created, or permitted continuation of, a policy or custom under which unconstitutional practices occurred, (4) was grossly negligent in supervising subordinates who committed the wrongful acts, or (5) exhibited deliberate indifference to the rights of inmates by failing to act on information indicating unconstitutional acts were occurring. *See id.* at 873 (citing *Wright v. Smith,* 21 F.3d 496, 501 (2d Cir.1994) and *Williams v. Smith,* 781 F.2d 319, 323–24 (2d Cir.1986)). In *Colon,* plaintiff claimed that Coughlin, then DOCS Commissioner, was grossly negligent in training and supervising the corrections officers under his management. *See id.* Plaintiff's verified complaint, however, set forth no facts in Colon's own knowledge that related to Coughlin or that would support a claim that Coughlin either knew or should have known of the wrongs or risks alleged by Colon. *See id.*

Nunez's failure-to-train claim is identical to the plaintiff's in *Colon.* Nunez asserts that Goord is responsible for the "improper training, improper supervision, improper selection, improper hiring, improper or minimal psychological evaluation, [and] poor impulse control" of corrections officers. Compl. at ¶ 14. Nunez's only allegation linking Goord to this claim is based on Goord's position as DOCS Commissioner. This allegation of personal involvement "lack[s] sufficient factual specificity to create a triable issue." *Colon,* 58 F.3d

at 874. Indeed, Nunez's entire claim alleging failure to supervise and train is subject to that fatal deficiency. Nunez did not, in his complaint or affidavit, state which correction officers are referred to, what improper training they received, or how Goord knew of the unconstitutional practices and exhibited deliberate indifference by failing to act or failing to supervise subordinates. Accordingly, this Court grants summary judgment in favor of Goord on Nunez's claim regarding failure to supervise and train.

## D. *PERSONAL INVOLVEMENT*

■ Defendants urge that all claims against Goord and Artuz be dismissed because Nunez failed to present any evidence to show their personal involvement. As stated above, personal involvement of defendants in an alleged constitutional deprivation is a prerequisite to an award of damages under § 1983. *See Colon,* 58 F.3d at 873. This Court has already discussed Nunez's failure to submit facts showing personal involvement of Goord as to the claim asserting failure to supervise and train. In addition, based on this Court's review of the record, Nunez failed to submit facts showing Goord's personal involvement in any of the wrongs alleged. Likewise, the Court has identified no facts on the record supporting Nunez's claim of personal involvement by Artuz in any of the wrongs alleged. Consequently, summary judgment on all § 1983 claims is granted as to Goord and Artuz.

■ However, Defendants failed to provide any reason why the personal involvement requirement applicable to § 1983 claims should affect Nunez's claim alleging negligence under New York state law. Accordingly, Nunez's state law claim survives summary judgment.

## *ORDER*

For the foregoing reasons, it is hereby

**ORDERED** that summary judgment be GRANTED in favor of all defendants on the § 1983 failure-to-protect and retaliation claims; and it is further

**ORDERED** that summary judgment be GRANTED in favor of Goord and Artuz on all § 1983 claims; and it is further

**ORDERED** that the § 1983 excessive force claim be DISMISSED against Schwartzman, Henschel and Woodly; and it is further

**ORDERED** that summary judgment be DENIED as to Nunez's claims for negligence under New York State law; and it is further

**ORDERED** that summary judgment be DENIED as to Nunez's § 1983, excessive force claim against defendants Turso, Suber, and Schneider; and it is further

**ORDERED** that the parties appear for a status conference before the Court at 40 Centre Street, Courtroom 618, on Friday, December 7, 2001, at 11:15 am.

**SO ORDERED.**