In the
United States Court of Appeals
For the Seventh Circuit

No. 00-1414

Donald Larkin,

Plaintiff-Appellant,

v.

Richard Galloway and Jerry Bowling,

Defendants-Appellees.

Appeal from the United States District Court
for the Southern District of Illinois.
No. 96-C-607--David R. Herndon, Judge.

Argued September 21, 2000--Decided September 21, 2001


   Before Rovner, Diane P. Wood, and Williams,
Circuit Judges.

   Diane P. Wood, Circuit Judge.  While he
was incarcerated at the Federal
Correctional Institution in Greenville,
Illinois (Greenville), Donald Larkin was
allegedly severely beaten by prison
personnel. About nine months later, he
filed a complaint under 42 U.S.C. sec.
1983 against two officers who he charged
were personally responsible, Lt. Richard
Galloway and Lt. Jerry Bowling.
Initially, the answers that Lts. Galloway
and Bowling filed said nothing about
exhaustion of prison remedies. In August
of 1999, however, shortly before trial
was to commence, they asked for and
received permission to amend their
pleadings to add the defense that Larkin
had failed to exhaust his administrative
remedies prior to filing suit, as
required by 42 U.S.C. sec. 1997e(a). The
district court concluded that the
exhaustion requirement indeed applied to
Larkin's case and it accordingly
dismissed his suit without prejudice.
Larkin now appeals, claiming that the
district court should never have allowed
the eleventh-hour amendment, and that the
exhaustion requirement does not apply to
him in any event. Recognizing the likely
pertinence of the Supreme Court's then-
forthcoming decision in Booth v. Churner,
121 S. Ct. 1819 (2001), we postponed
resolving Larkin's claim until that case

was decided. In light of Booth, as well as our decisions in Smith v. Zachary, 255 F.3d 446 (7th Cir. 2001), and Johnson v. Litscher, 2001 WL 915376 (7th Cir., Aug. 15, 2001), we now affirm.

I

As Larkin presents the facts, and as we take them for present purposes, the trouble started when, on October 26, 1995 (a time when the atmosphere in the prison was tense because of riots in other institutions), he was falsely accused of damaging the locks on his cell. As punishment, he was dragged by special Disturbance Control Team (DCT) officers, in full riot gear, to Greenville's Special Housing Unit. Upon his arrival there, Lt. Galloway confronted him. After a brief verbal exchange with Larkin, Lt. Galloway directed the DCT officers to take Larkin to the recreation area and "teach him some manners." They did. As Larkin reports it, he was "thrown into the walls and beaten with night sticks; kicked, punched, and thrown head first into the walls." After this initial beating (which stopped when Larkin suffered an asthma attack), the officers took Larkin to the Special Housing Unit's "strip room" and beat him again. While this second beating was taking place, Lt. Bowling arrived. Rather than commanding the guards to stop, however, he told them to "hurry up" and directed Larkin to strip naked if he wanted to avoid yet another beating. Larkin did, but his act of compliance did not help. The officers cuffed him, raked his face against the walls as they moved him, and threw him into a cell on top of another nude inmate. Before they left, they kicked and beat both inmates (who were still handcuffed at that point) with batons.

Greenville has an administrative grievance process, but Larkin did not try to use it in conjunction with this episode--a fact he acknowledges in his complaint. As he put it, "I was afraid to complain. I threw the grievance procedure away because I did not want to provoke this administration." With respect to relief, Larkin sought "to be Compensated for Mental, Emotional, and Physical distress. Also awarded for Unconstitutional Confinement, because of 5  mo. in segregation, do [sic] to the violation of my Constitutional Due

Process."

Lts. Galloway and Bowling filed their answers to Larkin's complaint on December 8, 1997 and May 27, 1998, respectively, but neither one mentioned this crucial omission on Larkin's part. In time, they filed a motion for summary judgment, but it was denied. The case moved along toward trial, as the district court granted Larkin's motion for a jury trial, appointed counsel for him, and granted in part counsel's motion for leave to reopen discovery. With respect to the latter motion, the district court decided to permit one deposition and to grant counsel's requests for videotapes, photographs, and certain prison records.

It was not until August of 1999 that Lts. Bowling and Galloway filed motions for leave to amend their answers to raise the affirmative defense that Larkin failed to exhaust his prison administrative remedies prior to filing suit. They also argued that, if they were permitted to amend, Larkin's suit should be dismissed because he conceded in his complaint that he had not used the prison grievance procedure. The magistrate judge denied the motion to amend as untimely under the scheduling order the court had entered on January 4, 1999, but the district court granted both the motion to amend and the motion to dismiss. Finally, Larkin filed a Rule 59(e) motion to amend the judgment, which the district court denied.

On appeal, Larkin argues that the district court abused its discretion in permitting Galloway and Bowling to amend their complaints at such a late date. Furthermore, he argues, even if the amendment was proper, the Prison Litigation Reform Act's (PLRA) administrative exhaustion requirement, which is found in 42 U.S.C. sec. 1997e(a), does not cover excessive force complaints or, if it does, his particular complaint comes under a narrow exception to the requirement. Larkin also challenges the district court's refusal to fully grant his motion to reopen discovery.

II

Although the parties do not raise the issue, we begin by considering our

subject matter jurisdiction. The district court dismissed Larkin's claim without prejudice, and in the usual case, such a dismissal does not qualify as an appealable final judgment because the plaintiff is free to re-file the case. See Furnace v. Board of Trustees, 218 F.3d 666 (7th Cir. 2000). Nonetheless, under certain circumstances a dismissal without prejudice will be sufficiently final to permit appellate review. If it is clear, for example, that the plaintiff will not be able to amend her complaint, the dismissal is final for purposes of appellate review. Id. at 670. That, we conclude, is the case here. It is apparent from the record that there is no amendment Larkin could make to his complaint that would permit it to go forward: amendment cannot change his argument about the district court's decision to allow the guards to raise the exhaustion point, nor can it alter the grounds on which we must consider that issue on its merits. It is even possible, though we express no definitive view on the subject, that a newly filed complaint would be barred by the statute of limitations. In Elmore v. Henderson, 227 F.3d 1009, 1011 (7th Cir. 2000), we held that "a suit dismissed without prejudice is treated for statute of limitations purposes as if it had never been filed." If that principle applies, then the two-year period expired long before the district court dismissed Larkin's claim; if instead the limitations period is measured from the time when exhaustion occurs and it is still possible for Larkin to do something, then perhaps a new suit might be timely. In any event, these are not points that are pertinent to the present litigation. We are satisfied that the district court's judgment on the present record is final for purposes of 28 U.S.C. sec. 1291.


A. Motions to Amend

Whether or not to grant a defendant's motion to amend her answer is a decision committed to the discretion of the district court. Jackson v. Rockford Housing Authority, 213 F.3d 389, 390 (7th Cir. 2000). Although it was certainly not necessary for the district court to grant the guards' motion, we cannot say that the court's decision amounted to an abuse of discretion. First, the district court

was entitled to conclude that a new look at the exhaustion question was warranted by this court's intervening decision in Perez v. Wisconsin Dep't of Corrections, 182 F.3d 532 (7th Cir. 1999), which held that exhaustion is required under sec. 1997e(a) even where a plaintiff seeks only money damages and the prison administrative process cannot award such damages, id. at 537. Second, under Rule 15(a) of the Federal Rules of Civil Procedure, the district court may grant leave to amend pleadings and such leave "shall be freely given when justice so requires." Fed. R. Civ. P. 15(a). Even though Rule 15(a) also acknowledges that leave to amend is "inappropriate where there is undue delay, bad faith, dilatory motive on the part of the movant . . . [or] undue prejudice to the opposing party by virtue of allowance of the amendment," Perrian v. O'Grady, 958 F.2d 192, 194 (7th Cir. 1992), the district court was entitled to reject Larkin's arguments that undue delay and bad faith existed here.

We also find no merit in Larkin's argument that the defendants' delay cost him his case because the statute of limitations has now run. (This argument is probably late in any event, as it appears most clearly only in his reply brief, but glimmers of it are present in earlier papers, so we address it for the sake of completeness.) As we noted above, it is not even clear that this is the case, and Larkin himself has equivocated on that point. Larkin never hinted that he erred in representing that he has, up until now, failed to exhaust. If that omission could somehow survive Booth, we might have a bigger problem. But, as we now explain, it cannot. The district court did not abuse its discretion in permitting the amendment, and even if it did, we would find the error to be harmless.

B.  A Claim "With Respect to Prison Conditions"

The PLRA requires administrative exhaustion of any prisoner claim "with respect to prison conditions." 42 U.S.C. sec. 1997e(a). Larkin argues that the phrase "with respect to prison conditions" should not be interpreted to include complaints about individual acts

of excessive force. This argument, unfortunately, runs headlong into our recent decision in Smith, which applied Booth to exactly this kind of claim. Booth itself took a broad view of the exhaustion requirement set forth in sec. 1997e(a), insofar as it held that exhaustion is required even if the prison's administrative process is incapable of giving the inmate the kind of remedial measure he or she has requested--in particular, monetary damages. See Booth, 121 S. Ct. at 1825. And while the parties in Booth both agreed that exhaustion would not be required if "the relevant administrative procedure lacks authority to provide any relief or to take any action whatsoever in response to a complaint," id. at 1822, the Court went on to discuss approvingly the government's argument that "the very fact of being heard and prompting administrative change can mollify passions even when nothing ends up in the pocket." Id. at 1823.

Larkin's argument, like that of the inmate in Smith, focuses less on the type of relief that might be granted and more on the difference between a single violent act or incident and the broader concept of "prison conditions." We do not disagree that this is a possible distinction, but for now it is one that this circuit has rejected in Smith. To similar effect, our later decision in Johnson rejects the idea that the PLRA's exhaustion requirement does not apply to acts of individual officers. Johnson, [slip op. at 4]. This may or may not be the ultimate conclusion the Supreme Court reaches: we acknowledge that the Court has granted certiorari in Porter v. Nussle, 121 S. Ct. 2213 (2001), to review the Second Circuit's decision in Nussle v. Willette, 224 F.3d 95 (2d Cir. 2000), which held that the PLRA's exhaustion requirement does not apply to allegations of particular instances of excessive force or assault by prison employees. 224 F.3d at 97. But, just as we said in Johnson, until the Supreme Court speaks we are bound in this circuit to follow Smith.


   C.  Perez

   After Booth, Larkin's alternative argument--that his case fits into a

narrow exception to the PLRA's administrative exhaustion requirement created by Perez--is also unavailing. Perez held that there is no futility exception to the administrative exhaustion requirement but it went on to reserve judgment on the proper way to resolve "a case in which the harm is done and no further administrative action could supply any 'remedy'. . . . [I]f the administrative process cannot provide compensation then there is no administrative remedy to exhaust." 182 F.3d at 538. Although some opinions have referred to this as an "exception" to the exhaustion requirement Perez recognized, see, e.g., Massey v. Helman, 196 F.3d 727, 734 (7th Cir. 2000), Brazelton v. Myatt, No. 99 C 1169, 1999 WL 966435 (N.D. Ill. Oct. 19, 1999); Rodriguez v. Oakley, No. 98 C 4152, 1999 WL 618840 (N.D. Ill. Aug. 9, 1999), it is more accurate to describe it as an issue Perez simply did not resolve.

The district court in this case, however, rejected the notion that Perez created an exception to the PLRA's exhaustion requirement. Larkin disagrees, claiming that Perez recognized a necessary exception to the exhaustion requirement, and that based on the facts pled in his complaint, he fits within it. He contends that once the beatings were over and his injuries had healed, "the harm was done and no further administrative action" could alter the amount of monetary damages to which he was entitled.

Even if Larkin is correct that his complaint is not the same as a prison condition complaint about poor heating, or unqualified medical staff, for which one could envision effective prospective relief, Perez is no longer the last word on the point. Booth, as we have already noted, took a broader view of the utility of prison administrative processes. It requires the exhaustion of all administrative procedures that have "authority to take some action in response to a complaint," even if the procedure cannot provide the only relief that the prisoner is seeking, e.g., money damages. 121 S. Ct. at 1823. In Larkin's case, this means that under sec. 1997e(a) Larkin had to exhaust any prison administrative process that (1) was empowered to consider his complaint and

(2) could take some action in response to it. Larkin does not contend that his excessive force complaint against Lts. Galloway and Bowling somehow lay beyond the authorized jurisdiction of the Greenville administrative process. And there is no question that some action could have been taken in response to the complaint, even after Larkin's wounds had healed; the officers might have been disciplined, he might have been moved to a unit or facility not under the defendants' supervision, and, at a minimum, he would have received a hearing on his grievances.

It cannot be said in Larkin's case that the "relevant administrative procedure lack[ed] authority to provide any relief or to take any action whatsoever in response to [his] complaint." 121 S. Ct. at 1822. The district court therefore properly dismissed Larkin's complaint for his admitted failure to exhaust as required by sec. 1997e(a).

III

Because Larkin's complaint was properly dismissed, we need not address his challenge to the district court's partial denial of his motion for additional discovery. The judgment of the district court is Affirmed.