*RECOMMENDED FOR FULL-TEXT PUBLICATION*
Pursuant to Sixth Circuit Rule 206

ELECTRONIC CITATION: 2004 FED App. 0299P (6th Cir.)
File Name: 04a0299p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

———————————

LOUIS BOYD; SAMMIE
EVERETT,
  *Plaintiffs-Appellants*
  *(03-5227/5228),*

MURRAY ALLEN; HOWARD R.
HARRIS; JOSHUA O. KYLES;
LARRY B. LEMONS; JESUS
VILLANUEVA MATA; PATRICK
U. MCGEE; RANDALL
MILLER; PAUL NEMCHEK;
LUIS NIEVES; JEROME PAUL;
CORY PURIFOY; SHANNON
QUINN; TRACY SMITH,
  *Plaintiffs-Appellants*
  *(03-5389),*

   *v.*

CORRECTIONS CORPORATION
OF AMERICA; PATRICK
WHALEN, Warden; STEVEN
DOTSON; MIKE TWEETY; JIM
COOKSEY; TONYA BOYD;
PRISON REALTY TRUST, INC.,
a/k/a PRISON REALTY

> Nos. 03-5227/
> 5228/5389

---

2  *Boyd et al. v. Corrections*  Nos. 03-5227/5228/5389
  *Corp. of Am. et al.*

CORPORATION; PRISON
MANAGEMENT SERVICES,
INC.; DOCTOR R. CRANTS;
BENNY REEVES; DAVID
PAYNE; CORRECTIONAL
MANAGEMENTS;
CHRISTOPHER CARY,
  *Defendants-Appellees.*

Appeal from the United States District Court
for the Western District of Tennessee at Jackson.
Nos. 99-01262; 99-01270; 00-01050—J. Daniel Breen,
District Judge.

Argued: June 15, 2004

Decided and Filed: September 8, 2004

Before: GILMAN and COOK, Circuit Judges; CLELAND,
District Judge.[*]

———————————

**COUNSEL**

**ARGUED:** C. Michael Robbins, ROBBINS & THOMAS,
Memphis, Tennessee, Sarah F. Kaas, CANNON &
DUNPHY, Brookfield, Wisconsin, for Appellants. James I.
Pentecost, PENTECOST, GLENN & RUDD, Jackson,
Tennessee, for Appellees. **ON BRIEF:** C. Michael Robbins,
ROBBINS & THOMAS, Memphis, Tennessee, Sarah F.

---

 [*]The Honorable Robert H. Cleland, United States District Judge for
the Eastern District of Michigan, sitting by designation.

Kaas, Mark L. Thomsen, CANNON & DUNPHY, Brookfield, Wisconsin, for Appellants.  Tom Anderson, ANDERSON LAW FIRM, Jackson, Tennessee, for Appellees.

———————————

## OPINION

———————————

RONALD LEE GILMAN, Circuit Judge.  The 15 plaintiffs in these three consolidated cases are prisoners who were convicted by Wisconsin state courts and held, at all relevant times, at the Whiteville Correctional Facility (WCF) located in Whiteville, Tennessee.  WCF is operated by the Corrections Corporation of America (CCA), a private entity.  The plaintiffs allege that they were severely beaten and subjected to racial epithets by members of WCF's Special Operations Response Team (SORT) in August of 1998, in violation of their rights under both federal and state law.

A magistrate judge decided these cases with the parties' consent.  The judge dismissed the claims of all 15 of the named plaintiffs, reasoning that they had not exhausted their available administrative remedies before filing suit as required by the Prison Litigation Reform Act.  For the reasons set forth below, we **AFFIRM** the district court's judgment as to plaintiffs Allen, Harris, Kyles, Lemons, Mata, McGee, Miller, Paul, Purifoy, Quinn, and Smith, **REVERSE** the judgment as to plaintiffs Boyd, Everette, Nemchek, and Nieves, and **REMAND** for further proceedings consistent with this opinion.

## I.  BACKGROUND

### A.  Factual background

This case concerns the efforts of the plaintiffs to utilize WCF's grievance procedure.  The grievance procedure is summarized in this section, while the plaintiffs' claims are discussed under the individual subheadings in Part II.C. below.

WCF's grievance procedure in effect during August of 1998 was outlined in an inmate handbook dated July 6, 1998, which states in relevant part as follows:

Each inmate at Whiteville Correctional Facility has the right to utilize the grievance procedure without fear of reprisal.  The grievance procedure provides a forum in which inmates may formally raise their concerns over incidents or conditions which personally affect them and allows these complaints to be considered and addressed at an institutional level.

Informal resolution of grievances is encouraged.  This process is initiated prior to the formal logging of a grievance in which the inmate agrees to allow a staff member to attempt to resolve his complaint.

Prior to filing a grievance, you should attempt to obtain an answer or solution to your grievance through a member of the unit team or you may also contact the grievance chairperson for assistance.  The grievance office is located in the F wing.

Grievance forms are available from any unit team member or in the library.  Grievances may be deposited in the locked mail box located in front of the inmate dining room.  The mail box is emptied daily, Monday through Friday.  Emergency grievances should be

forwarded to the grievance chairperson or shift supervisor (whenever the chairperson is not available) for immediate attention. If the matter is deemed a non-emergency, then it will be processed through normal procedures.

All grievances must be filed within seven (7) days of the occurrence or most recent in a series of occurrences giving rise to the grievance.

The district court explained the operation of the grievance system as follows:

In order to initiate the grievance procedure, an inmate must complete a grievance form identified as Form 14-5A and place it in the Grievance Mail Box or forward it to the Facility Grievance Officer. Upon receipt of the grievance, the Facility Grievance Officer assigns a number to the case and maintains a permanent grievance log. That individual shall, within fifteen (15) days of receipt of the grievance, conduct an investigation into the issue raised in the grievance and render a written decision, which is set forth in the "Report and Decision" portion of the grievance form. A copy of the decision is forwarded to the inmate. In the event an inmate is not satisfied with the decision of the Facility Grievance Officer, he may, within five (5) days of his receipt of the decision, appeal to the warden or his designee by completing the Request for Warden Review portion of the grievance form and submitting it to the warden. . . . The warden's written decision is to be rendered within fifteen (15) days of his receipt of the appeal. A copy of the grievance form will then be returned to the Facility Grievance Officer, who will forward a copy to the inmate.

### B. Procedural background

The plaintiffs originally brought these suits in the Middle District of Tennessee, alleging claims under 42 U.S.C. §§ 1983, 1985, and 1986, the Eighth and Fourteenth Amendments to the United States Constitution, and Tennessee state law. All three cases were eventually transferred to the Western District of Tennessee. The parties consented to having the cases heard by a magistrate judge, who subsequently granted the defendants' motions to dismiss all of the claims under review based upon the plaintiffs' alleged failure to exhaust their administrative remedies before filing suit in federal court.

## II. ANALYSIS

### A. Standard of review

We review de novo a district court's interpretation of the Prison Litigation Reform Act of 1995 (PLRA), 42 U.S.C. § 1997e. *Curry v. Scott*, 249 F.3d 493, 503 (6th Cir. 2001). The same standard of review applies to the dismissal of a prisoner's civil rights complaint for failure to exhaust administrative remedies. *McGore v. Wrigglesworth*, 114 F.3d 601, 604 (6th Cir. 1997).

### B. Does the PLRA's exhaustion requirement apply to prisoners who bring suit against correctional institutions run by private entities?

The PLRA states in relevant part: "No action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a). In the present case, the district court dismissed the plaintiffs' claims without prejudice for failure to satisfy the exhaustion requirement of § 1997e(a). The

plaintiffs, however, contend that they were not required to exhaust WCF's grievance procedure before filing suit because "[a] grievance system entirely under the control of a private[,] for profit corporation engaged in [the] housing of state prisoners with no oversight by any agency of the state or federal government is not an available administrative remedy as that term is used in the PLRA."

This court has no published opinion holding that the PLRA's exhaustion requirement applies to prisoners held in privately operated correctional facilities. In one unpublished opinion, however, this court affirmed the dismissal of a prisoner's suit against CCA because the prisoner had failed "to set forth any allegations that [he] submitted his complaints to the prison's formal grievance process and that any grievances were appealed to the highest authority." *Butler v. Gardner*, No. 00-4524, 2001 WL 1299000, at *1 (6th Cir. Aug. 9, 2001); *see also Robinson v. Corrections Corp. of America*, No. 99-5741, 2001 WL 857204, at *2 (6th Cir. June 20, 2001) (unpublished) (applying a separate provision of the PLRA in a prisoner's suit against CCA); *Treat v. Corrections Corp. of America*, No. 00-6000, 2001 WL 856981, at *1 (6th Cir. June 18, 2001) (unpublished) (stating that "[t]he PLRA applies to privately-operated prisons" and affirming the dismissal of the prisoner's suit as frivolous).

The Ninth and Tenth Circuits have likewise concluded that the PLRA's exhaustion requirement applies to suits against privately operated prisons. *Ross v. County of Bernalillo*, 365 F.3d 1181, 1184 (10th Cir. 2004) ("This requirement applies fully when the plaintiff is a federal or state inmate held in a privately operated facility."); *Murphy v. Jones*, No. 01-35336, 2001 WL 1450636, at *1 (9th Cir. Nov. 5, 2001) (unpublished) ("Because the Prison Litigation Reform Act ('PLRA') states that a prisoner 'confined in any jail, prison, or other correctional facility' cannot bring an action about prison conditions without exhausting administrative remedies, appellants' contention that the PLRA is inapplicable to

private correctional facilities lacks merit."). As the Tenth Circuit explained in *Ross*,

> [t]he purpose of this exhaustion requirement is to reduce the quantity and improve the quality of prisoner suits. *Porter v. Nussle*, 534 U.S. 516, 524, 122 S.Ct. 983, 152 L.Ed.2d 12 (2002). It is designed to achieve this purpose by 1) allowing prison officials an opportunity to satisfy the inmate's complaint, thus potentially obviating the need for litigation; 2) filtering out some frivolous claims; and 3) creating an administrative record that facilitates review of cases that are ultimately brought to court. *Id.* at 525.

365 F.3d at 1184.

We are persuaded that the PLRA's exhaustion requirement applies to prisoners held in private facilities. This conclusion is consistent with the language of the statute and the holdings of this and all other courts that have considered the issue. Our ruling is also consistent with the purpose of the exhaustion requirement, which applies with equal force whether the prisoner is held in a prison run by a governmental entity or one operated by a private corporation. The remaining issue in the present cases, then, is whether the plaintiffs exhausted their administrative remedies before filing these lawsuits.

**C. Did the plaintiffs exhaust their administrative remedies before filing suit in federal court?**

This court has held that, in order to satisfy the PLRA's exhaustion requirement, "a prisoner must plead his claims with specificity and show that they have been exhausted by attaching a copy of the applicable administrative dispositions to the complaint or, in the absence of written documentation, describ[ing] with specificity the administrative proceeding and its outcome." *Knuckles El v. Toombs*, 215 F.3d 640, 642

(6th Cir. 2000). The court in *Knuckles El* explained that the policy behind the heightened pleading standard is that

> [d]istrict courts should not have to hold time-consuming evidentiary hearings in order simply to determine whether it should reach the merits or decline under the mandatory language of § 1997e ("No action shall be brought . . . ."). In the absence of particularized averments concerning exhaustion showing the nature of the administrative proceeding and its outcome, the action must be dismissed under § 1997e.

*Id.* A dismissal under § 1997e should be without prejudice. *Id.* (holding that "the district court properly dismissed the entire complaint without prejudice"); *Brown v. Toombs*, 139 F.3d 1102, 1104 (6th Cir. 1998) ("Because in the present case there is no indication that the requirements of the statute have been complied with, the case should be dismissed without prejudice, and the activity that the new statute contemplates should now occur—state adjudication of the claims.").

In order to determine whether the plaintiffs in the present cases have satisfied this pleading requirement, we now turn to the relevant allegations contained in the amended complaints as to each plaintiff, along with the supporting documentation. This individualized analysis follows.

### 1. *Louis Boyd*

Louis Boyd alleged that in August of 1998 he was assaulted and subjected to racial epithets by members of SORT. The other plaintiffs all made substantially similar allegations. Boyd further alleged that, within a few days after being attacked,

> he obtained the assistance of Senior Correction Officer Roosevelt Jones. Plaintiff requested Senior Jones to provide him with a grievance form so that he could make

> complaint of the events of the evening of August 11, 1998. Jones provided a grievance form to the plaintiff. Plaintiff completed the form and attached a letter to it, addressed to the warden of WCF, Patrick Whalen. Within a day or so of his receipt of the form, plaintiff placed it with the letter in the hand of Senior Corrections Officer Roosevelt Jones with the request that it be delivered to the appropriate officers of the facility. Senior Jones thereafter personally delivered this grievance submitted by plaintiff to Ms. Diane Currie, the Grievance Chairperson at WCF at the time. Plaintiff has not received any response either to his letter to the warden or to the grievance he submitted.

Another allegation in Boyd's complaint, which is stated verbatim in the complaints of the other plaintiffs, is that

> [i]n August 1998 and the months following, Ms. Currie [the Grievance Chairperson at WCF] failed to accurately record or log the actual grievances received in her office from inmates at WCF. A number of these grievances concerned complaints about excessive force being used by SORT teams against inmates. Further, Ms. Currie's office was entered without authority on occasions, and she later found that grievances had been removed. Ms. Currie notified the Chief of Security at WCF at the time, Jim Cooksey, of these matters. Chief Cooksey took no action whatsoever to investigate this discrepancy or to ensure that it would not happen again.

> Chief of Security Cooksey at various times, during the August 1998 incidents at WCF concerning SORT team excessive force and thereafter, affirmatively acted to destroy evidence developed in the process of an "in house" investigation of the complaints about the SORT teams, including the secreting of photographic evidence of an inmate, who showed signs of physical abuse, in his office; and the removal of inmate grievance forms

complaining of SORT team assaults from Diane Currie's office.

The district court concluded that Boyd had "failed to bear his burden of showing he exhausted his administrative remedies" because he did not attach a copy of his grievance to the complaint, and that he did not make "any allegation that he ever attempted to inquire into the status of the grievance he filed or that he utilized the appeals process." Regarding Boyd's failure to attach any documentation, a prisoner-plaintiff may bear his pleading burden either "by attaching a copy of the applicable administrative dispositions to the complaint or, in the absence of written documentation, describ[ing] with specificity the administrative proceeding and its outcome." *Knuckles El*, 215 F.3d at 642. The lack of documentation is thus not fatal to Boyd's claim that he has exhausted his administrative remedies.

As for Boyd's failure to follow up on his submitted grievance, the district court relied on *Nunez v. Goord*, 172 F. Supp. 2d 417 (S.D.N.Y. 2001). In *Nunez*, the court cited the plaintiff's failure to follow up on a complaint letter written to the prison superintendent as one reason supporting its conclusion that the plaintiff had not exhausted his administrative remedies. *Id.* at 429. *Nunez* itself, however, cites no authority for the proposition that a plaintiff is obligated to follow up on a submitted complaint in order to exhaust administrative remedies, and we have found no other case that has adopted such a rule.

The district court also cited *Jorss v. Vanknocker*, No. C97-3719CRB (PR), 2001 WL 823771, at *2 (N.D. Cal. July 19, 2001) (unpublished), for the proposition that the "failure to receive [a] response to [a] grievance [is] no excuse for not completing the process." But in *Jorss*, unlike the present case, the prisoner received no response to his grievance submitted pursuant to the prison's preliminary, informal grievance procedure—the approximate equivalent of WCF's

informal procedure for resolving complaints without the need to file a formal grievance. The district court in *Jorss* noted that "Plaintiff was not foreclosed from proceeding with the prison appeal process and exhausting available administrative remedies because he did not receive a response to his informal appeal." *Id.* at *2. Boyd, in contrast, was required to wait for a grievance officer to make a decision regarding his formal grievance before he could appeal to the warden.

We conclude that the two cases relied upon by the district court have little persuasive value as applied to Boyd's situation. In contrast to *Nunez* and *Jorss*, moreover, several circuits have held that the exhaustion requirement is satisfied where prison officials fail to timely respond to an inmate's written grievance. *See Jernigan v. Stuchell*, 304 F.3d 1030, 1032 (10th Cir. 2002) ("[W]e agree that the failure to respond to a grievance within the time limits contained in the grievance policy renders an administrative remedy unavailable[.]"); *Lewis v. Washington*, 300 F.3d 829, 833 (7th Cir. 2002) ("We join the Eighth and Fifth circuits on this issue because we refuse to interpret the PLRA 'so narrowly as to . . . permit [prison officials] to exploit the exhaustion requirement through indefinite delay in responding to grievances.'"); *Foulk v. Charrier*, 262 F.3d 687, 698 (8th Cir. 2001) ("[O]nce [the prison] failed to respond to [the prisoner's written grievance], no further administrative proceedings were 'available' to him."); *Powe v. Ennis*, 177 F.3d 393, 394 (5th Cir. 1999) (per curiam) ("A prisoner's administrative remedies are deemed exhausted when a valid grievance has been filed and the state's time for responding thereto has expired."). Following the lead of the four other circuits that have considered this issue, we conclude that administrative remedies are exhausted when prison officials fail to timely respond to a properly filed grievance.

In the present case, Boyd specifically alleged that (1) he submitted a grievance form by giving it to a corrections officer, (2) the grievance covered "the events of the evening

of August 11, 1998," (3) the grievance was delivered to the Grievance Chairperson, who is designated in the grievance procedure as the appropriate recipient of grievances, and (4) prison officials totally failed to respond to the grievance. These detailed allegations satisfied Boyd's burden to "describe with specificity the administrative proceeding and its outcome," *Knuckles El*, 215 F.3d at 642, and establish that Boyd has exhausted his administrative remedies. We therefore reverse the district court's judgment as to Boyd's claims and remand his case for further proceedings.

### 2. Sammie Everette, Paul Nemchek, and Luis Nieves

Sammie Everette alleged that within approximately four days of the assault, "he requested an officer to provide him with a grievance form. Plaintiff wrote on . . . his grievance to the effect that he had been assaulted by the officers; that he had been denied medical attention; and that he desired to contact Wisconsin officials. Plaintiff never received any response to this grievance." Although Everette's allegations lack the detail of Boyd's, he still stated that he submitted a grievance that addressed the incident in question and that he received no response. Everette's case is a close one under the *Knuckles El* standard, but we believe that he has adequately alleged the essential facts necessary to avoid a motion to dismiss. We therefore reverse and remand his claims for further proceedings. For the same reason, we reverse and remand the claims of Paul Nemchek and Luis Nieves. Like Everette, Nemchek and Nieves both made similar allegations that they filed a grievance relating to the incident in question but that CCA failed to respond.

### 3. Murray Allen

Murray Allen alleged that, after he was assaulted by members of SORT, he

filed CCA grievances regarding the incidents . . . among other matters. CCA never held a hearing nor adequately responded and CCA's response was consistent with what the plaintiffs believe was the defendants' intentional and/or deliberately indifferent CCA practice and *de facto* policy of attempting to conceal CCA's unlawful conduct as alleged herein, including, but not limited to, the fact the Internal Affairs Office was pilfered and grievances pertaining to the use of force by SORT members removed and/or destroyed by [Chief of Security Jim] Cooksey, among others.

(Emphasis in original.) Allen attached a copy of his grievance form to the complaint. This document is illegible in the Joint Appendix and, consequently, we have no way to determine whether the form is signed by Allen or stamped "Received" by WCF. The district court's opinion, however, states that the document "showed no signs of having been submitted."

Even assuming that Allen's document was signed and stamped, the allegations of the complaint fail to satisfy the requirement that a prisoner-plaintiff "describe with specificity the administrative proceeding and its outcome." *Knuckles El*, 215 F.3d at 642. Allen asserts that "CCA never held a hearing nor adequately responded . . . ." But WCF's grievance procedures give prisoners no right to a hearing, and the allegation that CCA did not "adequately respond" does not indicate whether CCA failed to respond at all, or whether CCA did in fact investigate the matter and that Allen was simply unhappy with the result. The district court was therefore correct in dismissing his claims without prejudice.

### 4. Howard R. Harris

Howard R. Harris alleged that he did "not recall filing a grievance pursuant to the informal grievance policy because he feared for his safety but submits that CCA would not have

responded to any grievance . . . ." The district court concluded that Harris's "conclusory allegations of fear with respect to filing a grievance are not sufficient to excuse his failure to exhaust his administrative remedies."

In *Larkin v. Galloway*, 266 F.3d 718 (7th Cir. 2001), the prisoner-plaintiff alleged in his complaint that he had not used the prison grievance system before filing suit because he was "afraid to complain. I threw the grievance procedure away because I did not want to provoke this administration." *Id.* at 720. The Seventh Circuit affirmed the dismissal of the complaint without discussing the effect of the prisoner's alleged fear on his obligation to file a grievance. *Id.* at 723-24. Although *Larkin* supports the decision below, the Seventh Circuit did not squarely address the issue of whether fear of retaliation will excuse the failure to exhaust. We need not address the issue either, because even assuming that a fear of retaliation might excuse a prisoner's duty to exhaust, Harris has alleged no facts in support of his conclusion that "he feared for his safety . . . ." Because a prisoner-plaintiff must "describe with specificity the administrative proceeding and its outcome[,]" *Knuckles El*, 215 F.3d at 642, a prisoner who contends that he failed to exhaust out of fear should also have to "describe with specificity" the factual basis for his fear.

As for Harris's allegation that "CCA would not have responded to any grievance[,]" the district court properly observed that "[a]ny subjective belief on [his] part as to what the outcome might have been had [he] done so hardly excuses [his] failure to exhaust." *See Thomas v. Woolum*, 337 F.3d 720, 733 (6th Cir. 2003) ("Exhaustion . . . requires a plaintiff to bring a grievance to the state before coming to federal court even when the state has made clear that it will not grant the relief requested."); *Edwards v. Alabama Dep't of Corrs.*, 81 F. Supp. 2d 1242, 1256-57 (M.D. Ala. 2000) ("Regardless of their chances of success using the defendants' grievance

procedures, the PLRA requires the plaintiffs to exhaust them.").

In sum, Harris's nonspecific allegations of fear and his subjective feeling of futility do not excuse his failure to exhaust his administrative remedies. The district court was therefore correct in dismissing Harris's claims without prejudice.

### 5.  *Joshua Kyles*

Joshua Kyles alleged that he "requested grievance forms and filed grievances pursuant to the informal grievance procedure . . . . CCA did not respond adequately and/or destroyed the grievance(s) . . . ." Kyles attached copies of his grievance forms to his complaint. These grievance forms, however, do not address the alleged assault by members of SORT. One form complains about being housed in a cell with an inmate who smoked, and the others complain about being held in a high security unit. The district court therefore correctly concluded that Kyles "clearly failed to exhaust the claim for which he now seeks relief."

### 6.  *Larry B. Lemons*

Larry Lemons alleged that he "filed at least three CCA grievances, including, but not limited to, the grievances attached hereto . . . . However, CCA failed to ever adequately respond and/or destroyed grievances." Lemons attached three grievance forms to his complaint. But as the district court noted, the first form is not signed and, unlike the other two, was not stamped "Received" by WCF. On the third form, moreover, Lemons checked the box indicating that he did not want to appeal from the adverse decision of the grievance officer. The strongest evidence that Lemons exhausted his administrative remedies is provided by the second form, which is signed by Lemons, stamped "Received," and includes comments by the grievance officer. Lemons,

moreover, checked the box indicating that he wanted to appeal from the adverse decision of the grievance officer. The district court concluded, however, that Lemons failed to demonstrate exhaustion because "there is nothing to indicate that he made any effort to determine the status of his appeal on the other." For the reasons discussed above in connection with Louis Boyd's grievance, the great weight of authority is against using the plaintiff's failure to follow up on a properly lodged grievance as a factor that militates against a finding of exhaustion.

The more significant problem with Lemons's complaint is his allegation that "CCA failed to ever adequately respond . . . ." As previously discussed with regard to Murray Allen's complaint, this ambiguous allegation does not adequately describe "the administrative proceeding and its outcome" as required by *Knuckles El*. The district court was therefore correct in dismissing Lemons's claims without prejudice.

### 7.    Jesus Villanueva Mata

Jesus Villanueva Mata alleged that he "does not recall but may have filed grievances pursuant to the informal policy, but submits that CCA would not have adequately responded to his grievances and/or destroyed the grievances . . . ." For the reasons discussed above in connection with Howard R. Harris's grievances, the district court correctly concluded that this noncommital statement does not demonstrate that Mata exhausted his administrative remedies.

### 8.    Patrick U. McGee

Patrick McGee similarly stated that he "does not recall filing a CCA grievance because he believed that CCA would not respond adequately . . . ." As with Mata's claim, the district court was correct in deciding that McGee had failed to exhaust his administrative remedies.

### 9.    Randall Miller

Randall Miller alleged that he "filed CCA grievances pursuant to its informal grievance procedure . . . . These grievances were not adequately responded to by CCA." Miller attached four documents to his complaint. The first is a typed letter addressed to "Complaint/Grievance Investigator," which addresses the alleged assault by members of SORT. This letter is not stamped "Received" by WCF. The district court therefore correctly concluded that this document is insufficient to demonstrate that Miller actually submitted the grievance to WCF officials.

Also attached to the complaint is another letter that complains about Miller's confinement in a high security unit. This letter is not stamped and does not address the alleged assault. The third document is a letter to Warden Patrick Whalen complaining about Miller's continued confinement in the high security unit. This letter also is not stamped and does not address the assault. The fourth document attached to the complaint is a grievance form in which Miller complains that he has not received mail that was sent to him from outside the prison. Because none of these documents address the alleged assault, the district court correctly concluded that Miller had failed to exhaust his administrative remedies with respect to that claim.

### 10.    Jerome Paul

Jerome Paul conceded in his complaint that he "did not file a CCA grievance because he did not know about the existence of a legitimate grievance procedure." But as the district court observed, the grievance policy is set forth in the inmate handbook that "is provided to inmates as part of the prison orientation process." Paul, moreover, "does not allege that he never received a handbook or that prison officials somehow otherwise denied him access to an inmate handbook or to other information relative to the grievance procedure." The

district court therefore correctly concluded that Paul failed to exhaust his administrative remedies.

### 11.  Cory Purifoy

Cory Purifoy alleged that he "did file grievances pursuant to the existing informal grievance procedure . . . .  CCA did not adequately respond . . . ."  Purifoy attached copies of two grievance forms to the complaint.  The first grievance addresses the use of force by the members of SORT, but the form was not stamped "Received" and Purifoy did not attach the second page of the form that would include the grievance officer's decision and the boxes for Purifoy to indicate whether he wanted to appeal.  Similar to the allegation by Murray Allen, moreover, the allegation by Purifoy that CCA did not "adequately respond" does not sufficiently describe "the administrative proceeding and its outcome" as required by *Knuckles El*.  The district court was therefore correct in dismissing his claims without prejudice.

In the second grievance form, Purifoy requested that he be returned to the general population and have access to institutional programs.  The second form does not address the alleged assault and therefore does not demonstrate that Purifoy exhausted his administrative remedies on the issue in question.

### 12.  Shannon Quinn

Shannon Quinn conceded in his complaint that he "did not file a grievance pursuant to CCA's informal grievance procedure believing that CCA did not intend to adequately respond . . . ."  For the same reasons discussed in regard to Howard R. Harris's similar excuse, Quinn's allegation is insufficient to satisfy the PLRA's exhaustion requirement.  The district court's conclusion that Quinn failed to exhaust his administrative remedies is therefore correct.

### 13.  Tracy Smith

Tracy Smith alleged the following in his complaint: "After the incident described above, upon information and belief, Mr. Smith did file a CCA grievance but CCA did not adequately respond to any such grievance and/or destroyed the grievance."  For the reasons discussed above in connection with several of the named plaintiffs, this vague assertion does not satisfy the requirement of specific pleadings as set forth in *Knuckles El*.  The district court was therefore correct in concluding that Smith had failed to exhaust his administrative remedies.

### III.  CONCLUSION

For all of the reasons set forth above, we **AFFIRM** the district court's judgment as to plaintiffs Allen, Harris, Kyles, Lemons, Mata, McGee, Miller, Paul, Purifoy, Quinn, and Smith, **REVERSE** the judgment as to plaintiffs Boyd, Everette, Nemchek, and Nieves, and **REMAND** for further proceedings consistent with this opinion.