NOT RECOMMENDED FOR FULL-TEXT PUBLICATION
File Name:  05a0496n.06
Filed:  June 10, 2005

No. 04-5536

# UNITED STATES COURT OF APPEALS
# FOR THE SIXTH CIRCUIT

EARL CLAYTON III,

   Plaintiff-Appellant,

v.

UNITED STATES DEPARTMENT OF
JUSTICE; BUREAU OF PRISONS;
KATHLEEN HAWK SAWYER, Former
FMC-Lexington Warden; GEORGE
SNYDER, Former FMC-Lexington Warden;
M. SEVIGNTY, FMC-Lexington Director of
Safety,

   Defendants-Appellees.

ON APPEAL FROM THE UNITED
STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF KENTUCKY

Before:  SILER and SUTTON, Circuit Judges; O'MEARA, District Judge.[*]

SUTTON, Circuit Judge.  The Prison Litigation Reform Act of 1995, 42 U.S.C. § 1997e, imposes a heightened pleading requirement on inmates who bring lawsuits about the conditions of their confinement, requiring them (among other things) to plead with specificity that they have exhausted administrative avenues for relief.  Because Earl Clayton III, a federal prisoner, failed to

---

[*] The Honorable John Corbett O'Meara, United States District Judge for the Eastern District of Michigan, sitting by designation.

plead with specificity the subject matter of the claims he presented in the administrative proceedings, we affirm the district court's dismissal of his claims without prejudice.

I.

Earl Clayton III, a prisoner at the Federal Medical Center in Lexington, Kentucky, was diagnosed on April 25, 2001, as having histoplasmosis, a fungal disease that primarily affects the lungs. According to Clayton, he contracted the disease from exposure to bat and pigeon droppings at the prison facility. Physicians treated him for the disease and verified by x-ray examinations on July 5, 2001, and January 2, 2002, that he no longer had the illness or any other lung problems.

On November 10, 2003, Clayton filed a federal complaint against the Department of Justice, the Bureau of Prisons and various individual officials claiming that they had violated the following: (1) his federal constitutional rights under the First, Fourth, Sixth, Eighth, and Fourteenth Amendments, (2) his statutory rights under the Federal Tort Claims Act, (3) his state constitutional rights under unspecified provisions of the Kentucky Constitution and (4) his rights under unspecified "pendent" state laws. Although his complaint did not address whether he had pursued any administrative remedies to seek redress for his alleged injuries, he filed with the complaint a form provided by the district court requesting information from prisoners filing § 1983 or *Bivens* claims. On the form he noted that he had "filed an Administrative Tort Claim on April 17, 2003." Two weeks after filing the complaint and original form, he filed an amended form that provided further explanation: "I filed an Administrative Remedy concerning my health and the sanitation of this

facility. Complaint Denied." On the amended form, he also indicated (by placing X marks on the form) that he presented his claims to the Warden, appealed the Warden's response to the Regional Director and appealed the Regional Director's response to the Office of General Counsel. Responding to the form's question about the result of his administrative claims, he said that "[m]y claim was partially denied, and some of my issues were not addressed at all." Clayton did not attach the decisions denying his claims to the complaint.

The district court *sua sponte* dismissed the claims without prejudice because Clayton had failed adequately to describe the administrative proceeding and therefore had failed to show that he had exhausted his claims.

II

The Prison Litigation Reform Act (PLRA) prevents prisoners from bringing any action "with respect to prison conditions under . . . Federal law, . . . until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a). This exhaustion requirement "applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong." *Porter v. Nussle*, 534 U.S. 516, 532 (2002). To meet the exhaustion requirement, a prisoner must "plead his claims with specificity and show that they have been exhausted by attaching a copy of the applicable administrative dispositions to the complaint or, in the absence of written documentation, describ[ing] with specificity the administrative proceeding and its outcome." *Boyd v. Corrections Corp. of Am.*, 380 F.3d 989, 994

(6th Cir. 2004) (brackets in original). Describing the proceeding with specificity includes describing the subject matter of the proceeding, for details about the claim are "necessary for the district court to determine what, if any, claims have been exhausted." *Knuckles El v. Toombs*, 215 F.3d 640, 642 (6th Cir. 2000); *see also Boyd*, 380 F.3d at 994 (requiring that a prisoner "plead his claims with specificity and show that *they* have been exhausted") (emphasis added). In contrast to cases governed by the more lenient Federal Rules of Civil Procedure (where notice pleading is sufficient, *see* Fed. R. Civ. P. 8(a), and where leave to amend is freely given when justice requires, *see* Fed. R. Civ. P. 15(a)), "a plaintiff in a case covered by the PLRA may not amend his complaint to avoid a *sua sponte* dismissal." *Baxter v. Rose*, 305 F.3d 486, 489 (6th Cir. 2002). Indeed, the PLRA requires district courts to screen prisoner claims "before docketing, if feasible or, in any event, as soon as practicable after docketing" for, among other things, frivolousness or targeting parties immune from monetary claims. 28 U.S.C. § 1915A(a) & (b). We review de novo the district court's dismissal of a suit under the PLRA for failure to exhaust administrative remedies. *Curry v. Scott*, 249 F.3d 493, 503 (6th Cir. 2001).

Because Clayton did not attach a copy of the administrative dispositions of his case, the debate in this case centers on whether Clayton described with specificity the administrative proceedings and their outcome. Clayton, it is clear, fulfilled part of that requirement, for he did specify which proceedings he exhausted and their outcomes. He indicated that he filed an "Administrative Remedy" on April 17, 2003, which was denied. And he indicated that he pursued this complaint first to the Warden's level, then appealed the Warden's response to the Regional

Director, and finally appealed the Regional Director's response to the Office of General Counsel.

This process, he stated, resulted in his claim being denied—or being, as he says later in the form,

"partially denied," apparently because "some of [his] issues were not addressed at all." The outcome

of the complaints to the Warden and the Regional Director are apparent from the fact that he

appealed each of them. The process that he describes in his complaint tracks the "Administrative

Remedy Program" set out at 28 C.F.R. §§ 542.10–542.19: Clayton initially complained to an

institution staff member, *see* § 542.14(c)(4), and he appealed to the correct individuals, *see*

§ 542.15(a).

The problem, however, is that Clayton did not describe which claims he brought in those

administrative proceedings. He said only that he brought a tort claim "concerning my health and

the sanitation of this facility." This general complaint about health and sanitation does not provide

enough information for a district judge tasked with (1) comparing Clayton's federal complaint to

the claims Clayton brought through the administrative process and (2) determining whether the

federal claim was presented in the administrative proceeding. *See Baxter*, 305 F.3d at 488 ("[T]he

heightened pleading standard permits federal courts to determine whether the claim can be decided

on the merits, without inefficiently expending judicial resources on evidentiary hearings and

responsive pleadings."). A health-and-sanitation claim against a prison could rest on any number

of grounds. It could relate to another health problem (such as not getting medical assistance when

requested) or to another sanitation problem (such as unclean bathrooms or an unsanitary cafeteria).

*See, e.g.*, *Dellis v. Corrections Corp. of Am.*, 257 F.3d 508, 511 (6th Cir. 2001) (prisoner alleging

he was subjected to a flooded cell and deprived of a working toilet); *Brown v. Brown*, No. 01-3880, 2002 WL 31072072, at *1 (6th Cir. Sept. 16, 2002) (prisoner alleging he was prevented from purchasing personal hygiene items); *Curtis v. Curtis*, No. 01-6016, 2002 WL 926972, at *1 (6th Cir. May 6, 2002) (prisoner alleging deliberate indifference to medical needs and denial of personal hygiene items); *White v. Caruso*, No. 00-2257, 2002 WL 554488, at *1 (6th Cir. Apr. 12, 2002) (prisoner complaining of prison officials' failure to enforce smoking regulations and alleging he suffered various health problems as a result); *Abdur-Reheem-X v. McGinnis*, No. 99-1075, 1999 WL 1045069, at *1–2 (6th Cir. Nov. 12, 1999) (prisoner alleging "claims [that] all concern the issue of sanitation," such as being issued underwear that were too small and soiled, being placed in a cell with no sink or toilet and being housed next to a mentally ill patient who smeared feces on cell walls). Given the wide range of claims that could be described as health-and-sanitation claims, Clayton's complaint does not provide enough information to tell whether he brought his current claim (concerning histoplasmosis allegedly caused by bat and bird droppings) in the administrative proceedings. *See Knuckles El*, 215 F.3d at 642 (affirming dismissal for lack of specificity where prisoners "simply state[d] in their complaint that certain claims have been exhausted without providing the documentation or other details required"); *Thomas v. Woolum*, 337 F.3d 720, 733–34 (6th Cir. 2003) (affirming dismissal for lack of specificity where the grievance "mention[ed] neither the defendants themselves nor any facts suggesting that officers other than Woolum knew anything of the incident"); *Arbuckle v. Bouchard*, No. 03-1975, 2004 WL 542170, at *1 (6th Cir. Mar. 16, 2004) (affirming dismissal for lack of specificity where prisoner attached a grievance that did "not name anyone in particular as being responsible for his mistreatment"); *Gallagher v. Wilkinson*, No.

03-3193, 2003 WL 22170649, at *1 (6th Cir. Sept. 17, 2003) (affirming dismissal where prisoner "did not describe the subject of any grievance, against whom he filed any grievance, or why any such grievance was denied").

Nor does *Boyd v. Corrections Corp. of America*, 380 F.3d 989 (6th Cir. 2004), alter this conclusion. There, we concluded that a prisoner satisfied the heightened pleading standard by alleging that the grievance "covered 'the events of the evening of August 11, 1998.'" *Id.* at 996. *Boyd*'s reference to events, however, is much more detailed than Clayton's general reference to "health and [ ] sanitation"—both because Boyd described the events more particularly and because he circumscribed the scope of events by specifying a discrete period of time when the incidents occurred. At some point along the pleading spectrum, as *Boyd* suggests, requiring more than references to particular events changes the requirement from specificity in pleading to exactness in pleading. But Clayton's description does not approach that point because of the wide range of potential claims covered by a prisoner's health-and-sanitation complaint.

As the district court dismissed the complaint without prejudice, however, this conclusion is not the end of the road for Clayton's complaint. He may, if he wishes, cure this problem by refiling his federal complaint and either providing the requisite information about the claims he brought administratively or attaching the administrative dispositions themselves.

III.

For these reasons, we affirm the dismissal of Clayton's claims without prejudice.